# Exhibit A

# to FCA US's Notice of Removal

Superior Court of California, County of Riverside

Register of Actions

www.riverside.courts.ca.gov

CVRI2202212: TROVATO vs AARON CHRYSLER OF NORCO

Civil

Unlimited Civil Mass Tort

Historic Court House Department 1

Status: Active

| Complaints | File Date | Disposition |
|---|---|---|
| Complaint for Mass Tort of CHRISTINE TROVATO | 06/01/2022 | |

| Plaintiff(s) | Defendant(s) |
|---|---|
| CHRISTINE TROVATO | AARON CHRYSLER OF NORCO |
| NMD: AN INDIVIDUAL, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED ATT: JENKINS MULLIGAN & GABRIEL LLP | FKAB: BROWNING DODGE, A CALIFORNIA CORP. FIAT CHRYSLER AUTOMOBILES (FCA) US, LLC NMD: A DELAWARE CORP. |

| Date | Action |
|---|---|
| 06/01/2022 | Case assigned to Department: Department 1 |
| 06/01/2022 | Class Action Complaint Filed By: CHRISTINE TROVATO |
| 06/01/2022 | Certificate of Counsel. Filed By: CHRISTINE TROVATO |
| 06/01/2022 | Summons Issued and Filed Filed By: CHRISTINE TROVATO |
| 06/01/2022 | Civil Case Cover Sheet (Complex) (CM-010) Filed By: CHRISTINE TROVATO |
| 06/02/2022 | Payment: $450.00, Filing RV, Green, for TROVATO, CHRISTINE, Receipt: EFM20220602-00751 |
| 06/02/2022 | Payment: $1,000.00, Filing RV, Green, for TROVATO, CHRISTINE, Receipt: EFM20220602-00751 |
| 06/02/2022 | Payment: $1.85, Filing RV, Green, for TROVATO, CHRISTINE, Receipt: EFM20220602-00751 |
| 06/02/2022 | Notice of Department Assignment |
| 06/07/2022 | Class Action Case Management Order #1 |

Superior Court of California, County of Riverside
Register of Actions
www.riverside.courts.ca.gov

CVRI2202212: TROVATO vs AARON CHRYSLER OF NORCO
Civil
Unlimited Civil Mass Tort
Historic Court House Department 1
Status: Active

Date        Action

06/07/2022  Clerk's Certificate of Mailing

06/07/2022  Minute Order: Court Ruling re:

06/07/2022  Court Ruling re: at 8:30 AM in Department 1 Honorable Craig Riemer,
            Judge
            L. Howell, Courtroom Assistant
            Court Reporter: None
            APPEARANCES:
            No Appearances
            Class Action Case Management Order #1:
            Court deems case complex pursuant to Section CRC 3.400.
            Minute entry completed.

Electronically FILED by Superior Court of California, County of Riverside on 06/01/2022 01:18 PM
Case Number CVRI2202212 0000023103570 - W. Samuel Hamrick Jr., Executive Officer/Clerk of the Court By Arnia Brown, Clerk

1   **DANIEL J. MULLIGAN [103129]**
    JENKINS MULLIGAN & GABRIEL LLP
2   4079 Governor Drive, 5015
    San Diego, CA 92122
3   Telephone:   858-529-2372
    dan@jmglawoffices.com
4

5   Attorneys for Plaintiff Christine Trovato
6   on behalf of herself and all others
    similarly situated
7

8

9

10

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
12                          **COUNTY OF RIVERSIDE**
13

| | |
|---|---|
| **CHRISTINE TROVATO**, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**AARON CHRYSLER OF NORCO,** formerly known as **BROWNING DODGE**, a California corp.; **FIAT CHRYSLER AUTOMOBILES (FCA) US, LLC**, a Delaware corp.; and **DOES 1–50**, inclusive,<br><br>Defendants. | Case No.: **CVRI2202212**<br><br>**CLASS ACTION COMPLAINT**<br><br>1) **VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES ACT**<br>2) **VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**<br>3) **FRAUD AND DECEIT**<br>4) **NEGLIGENT MISREPRESENTATION**<br>5) **UNJUST ENRICHMENT**<br>6) **NEGLIGENCE**<br>7) **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**<br>8) **BREACH OF EXPRESS WRITTEN WARRANTY**<br>9) **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**<br><br>**JURY TRIAL DEMANDED** |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-1-

1  Plaintiff CHRISTINE TROVATO, an individual ("Plaintiff") on behalf of herself and
2  on behalf of all others similarly situated, brings this individual and class action complaint
3  against Defendants AARON CHRYSLER JEEP DODGE RAM OF NORCO a California
4  corporation ("Aaron") and FCA US, LLC, a Delaware corporation (hereinafter "FCAUS")
5  ("Defendants"). Plaintiff herein allege as follows.

6  **I.    INTRODUCTION**

7       1.    Plaintiff purchased a 2018 Chrysler Pacifica PHEV in or around January
8  2018 from Browning Dodge in Norco, CA.

9       2.    Defendant AARON is the successor to Browning Dodge and is an
10  automobile dealership in Southern California, including in Norco, California where
11  Browning Dodge sold the PHEV (as hereinafter defined) to the Plaintiff.

12       3.    This consumer class action arises out of Defendants' AARON's and FCAUS's
13  failure to disclose a uniform and widespread defect causing its 2017 to 2018 Chrysler
14  Pacifica Plug-in Hybrid Electric Vehicles ("PHEVs") to explode and catch fire.

15       4.    On February 11, 2022, after receiving numerous complaints regarding such
16  PHEV fires, Defendant FCAUS issued Recall No. 22V-077 (hereinafter, the "Recall" or
17  "Chrysler Recall") for such PHEVs.

18       5.    Plaintiff first learned of the Recall when she was speaking to a Chrysler
19  representative in late 2021 regarding continuing issues she had experienced with her
20  vehicle, which had been taken to two different dealerships for 8 weeks of repair work,
21  none of which work fixed the failures which included the complete failure of the dash and
22  other electronic components. The Chrysler representative stated that the issue had been
23  elevated to a Chrysler "star" case and that the problems were likely connected to the recall
24  regarding fire risks, which Plaintiff had not heard about before. Plaintiff then parked the
25  car away from the house and stopped using it because of the warning from the Chrysler
26  representative. Plaintiff later received a recall notice ("the Chrysler Recall") from Chrysler
27  in the mail.

28       6.    The Recall notice explains the reason for the safety recall:

> Some 2017–2018 MY Chrysler Pacifica Plug-In Hybrid Electric Vehicles ("PHEVs") have experienced fires. The defect has not yet been identified and the root cause of these fires is still being investigated.
>
> A vehicle may experience a fire, even with the ignition in the "OFF" mode.
>
> A vehicle fire can result in increased risk of occupant injury and/or injury to persons outside the vehicle, as well as property damage.
>
> **The remedy for this condition is under development. Root cause is unknown**

7.      Subsequently, both Defendant AARON and FCAUS have told the Plaintiff that neither of them know the cause of these fires. AARON and FCAUS have refused Plaintiff's demand to replace the vehicle.

8.      For the Plaintiff and others similarly situated, no remedy exists for buyers of the Pacifica PHEVs. Without offering an adequate remedy, both Defendants have asked owners of 2017 to 2018 Chrysler Pacifica Plug-In Hybrid Electric Vehicles ("PHEVs") to abstain from plugging in their minivans and parking near buildings.

9.      Plaintiff and Class Members were harmed because they were in fear and at risk of immediate catastrophic injury to herself and passengers of the Class Vehicles, and people and property surrounding the Class Vehicle.

10.     These vehicles (hereinafter the "Class Vehicles") are the 2017 and 2018 models of the Chrysler Pacifica PHEVs.

11.     Because the Class Vehicles are at risk of exploding or catching fire due to an unknown cause, Plaintiff and all others similarly situated are in an immediate risk to herself, the vehicles' occupants, and/or the property surrounding the vehicles. As a result, Class Vehicle owners and lessees have been burdened with vehicles that do not perform as advertised and cannot be safely parked or driven like other cars.

12.     Due to the undisclosed defect(s), Plaintiff and Class Members were deprived of the benefit of their bargain in purchasing or leasing their Class Vehicles. Plaintiff needed the vehicle to assist her husband in getting in and out because of his disability.

1  While she has another vehicle, it is difficult for her husband to get in and out of that

2  vehicle which was one reason she purchased the Class Vehicle. After many complaints

3  from Plaintiff, Chrysler finally agreed to reimburse Plaintiff for the cost of a rental vehicle.

4  This happened in May 2022. Chrysler put a cap on the daily amount but would not

5  specify how long this reimbursement would be continued.

6        13.    Plaintiff and Class Members have also suffered an ascertainable loss of

7  money, property, and/or value of their Class Vehicles.

8        14.    Plaintiff, for herself and all others similarly situated, brings this class action

9  in response to the serious manufacturing defect in the minivan(s) that can result in

10  catastrophic damages to the vehicles.

11       15.    Plaintiff seeks monetary damage and injunctive and other equitable relief

12  for Defendants' misconduct in the design, manufacture, marketing, sale, and lease of the

13  Class Vehicles as alleged in this Class Action Complaint.

14  **II.    PARTIES**

15       **A.    Plaintiff**

16       16.    Plaintiff Christine Trovato ("Plaintiff" or "Ms. Trovato") is a resident and

17  citizen of Norco, California.

18       17.    Plaintiff made the decision to purchase her 2018 Chrysler Pacifica PHEV

19  after researching electric vehicles and relying on Chrysler online advertisements and

20  brochures assuring customers that "[y]our family's safety and security are what matter

21  most."

22       18.    Based on information and belief, advertisements were disseminated by

23  Defendant throughout California and the United States regarding the safety of the Class

24  Vehicles.

25       19.    Since the Recall, Plaintiff has been left with a vehicle that could catch fire at

26  any second, resulting in an immediate risk to the vehicles' occupants, or the property

27  surrounding the vehicle. Plaintiff has not used the vehicle and parks it as far away from

28  her home as possible.

-4-

**B.    Defendants**

20.    Defendant FCA US, LLC (hereinafter "**FCAUS**") is a corporation, formerly known as Chrysler Group, LLC, organized and in existence under the laws of the State of Delaware.

21.    Defendant AARON, INC. (hereinafter "**AARON**", together with FCAUS, "**Defendants**") is, upon information and belief. a California corporation with its principal place of business in California.

22.    Defendant FCAUS's principal place of business is in the State of Michigan.

23.    At all times relevant herein, Defendant FCAUS was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in the United States.

24.    FCAUS offers passenger cars, utility vehicles, minivans, trucks, and commercial vans, as well as distributes automotive service parts and accessories.

25.    As the North American arm of Fiat Chrysler Automobiles, FCAUS manufactures a range of vehicles under its Fiat and Chrysler brands.

26.    From its headquarters in Michigan, Defendant FCAUS marketed the Class Vehicles to consumers.

**III.    AGENCY/JOINT VENTURE/AIDING AND ABETTING CONSPIRACY**

27.    Plaintiff are informed and believe, and upon such basis allege, that at all times herein mentioned, all unnamed co-conspirators were an agent, servant, employee and/or joint venture of Defendants, and was at all times acting within the course and scope of said agency, service, employment, and/or joint venture.

28.    Defendants and unnamed co-conspirators, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, Defendants and each unnamed

1　　co-conspirator acted with an awareness of his/her primary wrongdoing and realized that

2　　his/her conduct would substantially assist the accomplishment of the wrongful conduct,

3　　wrongful goals, and wrongdoing. In addition, each of the acts and/or omissions of

4　　Defendants and each unnamed co-conspirator alleged herein were made known to, and

5　　ratified by, Defendants.

6　　　　29.　　Defendants, and each unnamed co-conspirator, conspired with each other

7　　and with others, to perpetrate the unlawful scheme on Plaintiff, as alleged in this

8　　Complaint. In so doing, Defendants, and each unnamed co-conspirator, have performed

9　　acts and/or made statements in furtherance of said conspiracy, while at all times acting

10　　within the scope of and in furtherance of the conspiracy alleged in this Complaint, and

11　　with full knowledge of the goals of that conspiracy.

12　　　　30.　　Plaintiff sues Defendants, and each unnamed co-conspirator, as

13　　participants, alter egos of one another, agents of one another, and conspirators with one

14　　another in the improper acts, plans, schemes, and transactions that are the subject of this

15　　Complaint.

16　　**IV.　　FACTUAL ALLEGATIONS**

17　　　　**A.　　Ms. Trovato Has Been Affected By FCAUS's Recall**

18　　　　31.　　Ms. Trovato purchased her new 2018 Chrysler Pacifica PHEV, VIN

19　　#2C4RC1L74JR129542, in or around January of 2018 at Browning Dodge in Norco,

20　　California.

21　　　　32.　　Plaintiff learned of the Chrysler Pacifica PHEV through online Chrysler

22　　advertisements and brochures depicting the Class Vehicle as safe and family friendly.

23　　　　33.　　Despite this representation, Defendant FCAUS now urges consumers who

24　　are affected by its Recall to refrain from recharging them and to park them away from

25　　structures and other vehicles. Plaintiff purchased his vehicle because it is spacious, family

26　　friendly, and purported to be safe.

27　　　　34.　　Due to the Recall, Mr. and Mrs. Trovato do not feel safe parking their vehicle

28　　at their own house. After learning about the Recall, Plaintiff stopped charging the vehicle

-6-

1    and has minimized using the vehicle out of fear of immediate catastrophic injury to
2    herself.

3        35.    Plaintiff has, therefore, been damaged, and seeks, on behalf of herself and
4    the putative class, damages, rescission, restitution, and injunctive relief in the form of
5    requiring FCAUS to cease its false advertising and engage in in a corrective campaign to
6    fully disclose material information about the Class Vehicles' risk of fires.

7        36.    The Chrysler Recall states that FCAUS has no remedy at the moment for the
8    Class Vehicles: "FCA US will conduct a voluntary safety recall on all affected vehicles.
9    Remedy is under development." The Recall further states that, "[u]ntil further notice,
10   [FCAUS] is advising owners of these hybrid vehicles to refrain from recharging them, and
11   to park them away from structures and other vehicles." The Recall report also states that,
12   "Remedy is under development. Root cause is unknown."

13       **B.    The Class Vehicle Recall Affects Nearly 20,000 Minivans**

14       37.    The main difference between a hybrid plug-in versus a regular hybrid is that
15   the former is powered chiefly by an electric motor and will use its internal combustion
16   engine as a back-up should the electric motor's battery run out of fuel, and the latter is
17   powered by both a petrol-fueled internal combustion engine and a battery-powered
18   electric motor that can work either independently or simultaneously.

19       38.    A regular hybrid cannot be plugged into a recharging station to power up the
20   car's battery.

21       39.    The Chrysler Pacifica is a plug-in hybrid, but owners of 2017 to 2018
22   Chrysler Pacifica PHEVs are now being advised not to plug in their minivans to charge,
23   since the model is subject to Recall for risk of spontaneous fires. The ability to charge up
24   and drive a Chrysler Pacifica PHEV is one of the primary considerations for purchasers or
25   lessees of electric vehicles.

26       40.    Notably, a Consumer Report study shows that 71% of respondents said they
27   would do most of their charging at home.

28

-7-

41. FCAUS contends that the "root cause is unknown" and the "remedy is under development," in its Recall Report. Defendant FCAUS describes the safety risk of a vehicle fire to consumers as, "an increased risk of occupant injury and/or injury to persons outside the vehicle, as well as property damage." This is true, "even with the ignition in the 'OFF' mode."

42. The potentially affected vehicle production period began on August 12, 2016, when the production of the Chrysler Pacifica PHEVs began, and ended on August 7, 2018, when the 2018 production ended. On information and belief, Plaintiff allege that a total of 19,808 minivans are included in the Recall, with 16,741 in the United States, 2,317 in Canada and an additional 750 in places outside North America.

43. Defendant FCAUS estimates that the estimated percentage of Class Vehicles with the unknown defect is 100%.

### C. Defendant's Marketing to Class Vehicle Owners and Lessees Emphasized the Importance of Safety of the Chrysler Pacifica PHEV

44. Although Defendant FCAUS reports that the "root cause [of the fires] is unknown," it represented to 2017 and 2018 Chrysler Pacifica PHEV consumers that the minivan was suited as a family vehicle and that the minivan sported numerous safety and security features.

#### 1. 2017 Chrysler Pacifica PHEV

45. Specifically, Defendant represented to consumers of the 2017 Chrysler Pacifica PHEV that, "your family's safety and security are what matter most." Further, Defendant FCAUS highlighted the 2017 Chrysler Pacifica PHEV as having "100+ standard and available safety & security features."

46. Defendant FCAUS represented in its materials that, "paramount to helping protect you and your family is over 100 standard and available safety and security features that automatically react in the blink of an eye."

-8-

1        47.    Based on information and belief, these representations were disseminated

2   by FCA US, LLC throughout California and the United States regarding the safety of the

3   vehicle.

4             **2.**    **2018 Chrysler Pacifica PHEV**

5        48.    Similarly, Defendant FCAUS represented to consumers of the 2018 Chrysler

6   Pacifica PHEV that the minivan was "here to serve your real life with care as the most

7   family friendly minivan in its class."

8        49.    Defendant FCAUS further represented to consumers of the 2018 Chrylser

9   Pacifica PHEV that "your family's safety and security are what matter most". Prior to and

10   at the time of purchase, both Defendants emphasized the 2018 minivan's numerous safety

11   and security features. Defendant FCAUS also highlighted its mission for reducing

12   emissions and helping consumers "see savings."

13        50.    Defendant FCAUS advertised the 2018 Chrysler Pacifica PHEV as having "a

14   33-mile electric driving range," and "less dependent on gas, helping you produce less

15   emissions for a greener planet."

16        51.    Further, the 2018 Chrysler Pacifica marketing campaign targeted California

17   specifically. "Forty percent of all hybrids are sold in the State of California—it's also the

18   biggest minivan market in the country—so it makes perfect sense that we say the Chrysler

19   Pacifica Hybrid is the 'Official Family Vehicle for California,'" claimed Tim Kuniskis of

20   FCA US, LLC's North America branch.

21        52.    The advertisements included broadcasting, print, radio, social media, and

22   even billboards across the state.

23        53.    Based on information and belief, these representations were disseminated

24   by FCAUS throughout California and the United States regarding the safety and efficiency

25   of the vehicle.

26        **D.**    **The Unknown Defect Poses a Significant Safety Risk to Class**

27             **Vehicle Owners and Lessees**

28

54. Despite Defendant FCAUS's representations about the family utility, safety, and efficiency of the Class Vehicles, Defendant FCAUS has now advised owners of the Class Vehicles "to refrain from recharging the high voltage battery, and to park them away from structures and other vehicles."

55. Defendant chronologized its internal investigation in its Recall Report as follows:

**Chronology:**

- On August 31, 2021, the FCA US LLC Technical Safety and Regulatory Compliance organization opened an investigation as a result of detecting a potential trend in fires in certain Chrysler Pacifica PHEVs.

- From September 2021, to January 2022, FCA US repurchased two vehicles for origin and cause investigation. The cause of these fires is under investigation.

- As of February 4, 2022, FCA US is aware of ten additional fires. The cause of these fires is under investigation.

- As of February 4, 2022, FCA US has identified five customer records, zero warranty claims, and 12 field reports potentially relating to this issue for all markets with dates of receipt ranging from April 23, 2019, to December 14, 2021.

- As of February 4, 2022, FCA US is not aware of any accidents or injuries potentially relating to this issue for all markets.

- On February 6, 2022, FCA US determined, through the Vehicle Regulations Committee, to conduct a voluntary safety recall of the affected vehicles.

56. Despite the investigation Defendants continue to only tell owners to refrain from charging Class Vehicles, and to park them away from structures and other vehicles. No other remedies have been offered. The Class Vehicles do not perform as Defendant advertised. Class Vehicle owners and lessees were promised the ability to plug in their vehicles, the utmost safety of the vehicles, and that their families would be safe using the

-10-

1  vehicles. Further, drivers and lessees reasonably assumed their vehicles could be parked

2  like any other car. Instead of performing as Defendant advertised, the Class Vehicles pose

3  a significant safety risk to Class Vehicle owners and lessees, their families, other

4  occupants in the vehicles, and surrounding property.

5    57. This is not the first recall for the Pacifica Hybrid, nor the first for

6  unexpected fires. Plaintiff alleges upon information and belief that fires in PHEV vehicles

7  are a known industry hazard, as evidenced by the Ford recall for the same reason in or

8  around May 19, 2022. Defendant recalled 27,634 Chrysler Pacifica PHEVs in response to

9  a similar fire-related problem in 2020. Owners were warned to park their vehicles outside

10  back in 2020 ("2020 Recall"), due to a poor connection to the vehicle's 12-volt battery that

11  could cause a fire. Other Pacifica models have also faced issues with unexpected stalling,

12  according to a recall in 2017. The 2020 Recall covered 2017 through 2020 Chrysler

13  Pacifica PHEVs was issued June 11, 2020, and a final remedy was circulated in December

14  2020—six months later. In the interim, consumers were advised to not park their vehicles

15  inside of buildings or structures and avoid parking near other vehicles because the

16  vehicles were at a heightened risk of fire.

17    58. At least a portion of the vehicles affected by the 2020 Recall fall into the

18  definition Class Vehicles as defined above and are still at a heightened risk of fire with no

19  known root cause.

20    59. Defendant FCAUS's knowledge of the fires dating back to at least April 23,

21  2019 of Class Vehicles, and its subsequent inaction, has resulted in harm to Plaintiff and

22  Class Members.

23    **E.** **The Proposed Recall is Insufficient to Remedy the Harm to Class**

24      **Vehicle Owners and Lessees**

25    60. On February 11, 2022, more than three years after the first known incident

26  of fire in the Class Vehicles, and more than six years after FCAUS began manufacturing

27  and distributing Class Vehicles, FCAUS announced its intent to recall nearly 20,000

28  vehicles that "may experience a fire, even with the ignition in the 'OFF' mode," which can

-11-

1    result in "increased risk of occupant injury and/or injury to persons outside the vehicle, as

2    well as property damage."

3        61.    FCAUS notified consumers that a "remedy is under development" and the

4    "root cause is unknown." Defendant also notified consumers that:

5        Remedy is under development. Until further notice, the Company is
         advising owners of these hybrid vehicles to refrain from recharging them,
6        and to park them away from structures and other vehicles.

7        FCA US has a longstanding policy and practice of reimbursing owners who
         have incurred the cost of repairing a problem that subsequently becomes
8        the subject of a field action. To ensure consistency, FCA US, as part of the
         owner letter, will request that customers send the original receipt and/or
9        other adequate proof of payment to the company for confirmation of the
         expense.
10

11       62.    This "fix" leaves consumers with a vehicle that is nearly useless and at risk of

12   immediate fire—resulting in harm to Class Vehicle owners and lessees. FCAUS has been

13   aware of the unexpected fires since at least 2020, the date of its first fire-related recall of

14   27,634 Chrysler Pacifica PHEVs. Even after the 2020 recall, fires are continuing to occur.

15       63.    FCAUS began notifying owners on or about April 4, 2022. There is no

16   justification for this delay, particularly because Defendant FCAUS has told car owners to

17   refrain from charging them and parking them away from other structures and buildings.

18       64.    Defendant FCAUS's knowledge of the unexpected fires, and its subsequent

19   inaction, has resulted in harm to Plaintiff and Class Members.

20   **V.    CLASS ALLEGATIONS**

21       65.    Pursuant to section 382 of the Code of Civil Procedure and section 1781 of

22   the Civil Code, Plaintiff brings this action as a class action on their own behalf and on

23   behalf of all persons similarly situated as members of the following class:

24       **"All owners of Class Vehicles who purchased or leased their vehicles in**

25       **the United States."**

26       66.    Excluded from the above class are Defendants, their officers, directors and

27   employees, and any entity in which Defendants have a controlling interest, the agents,

28

-12-

affiliates, legal representatives, heirs, attorneys at law, attorneys in fact or assignees thereof, and the Court.

67. Alternatively, Plaintiff propose a California class, as defined as follows:

**"All owners of Class Vehicles who purchased or leased their vehicles in California."**

68. Subject to additional information obtained through further investigation, fact collection and discovery, the foregoing definition of the Class may be expanded or narrowed by further amendment.

69. Specifically excluded from the proposed Class are the Defendants and any of their past, present or future officers, directors, trustees, agents, representatives, employees, principals, trusts, partners, joint ventures or controlled entities; any successors, assigns, heirs or other persons or entities related to or affiliated with Defendants.

70. Class action litigation is superior to all other available means for the fair and efficient adjudication of this controversy.

71. The damages, harm and financial detriment suffered by individual members of the Class are relatively minor compared to the burden and expense that would be entailed by individual prosecution of their claims against Defendants. It would thus be practically impossible for the members of the Class, on an individualized basis, to effectively seek and obtain redress for the wrongs committed against them.

72. Further, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the identical factual predicate. Individualized litigation would also result in a substantial increase in the time and expense required of the parties and the Court to address the issues raised by this litigation.

73. By contrast, litigation of the controversy outlined herein as a class action provides the benefits of adjudication of these issues in a single, unitary proceeding, provides substantial economies of scale, allows comprehensive supervision of the legal

1    and factual issues raised herein by a single court, and presents no unusual management
2    difficulties under the circumstances presented here.

3        74.    Common questions of law and fact applicable to all Class Members
4    predominate over any questions affecting only individual Class Members.

5        75.    Any applicable statutes of limitations have been tolled by Defendants'
6    knowing and active concealment of the facts alleged herein. Despite exercising reasonable
7    diligence, Plaintiff and members of the Class did not discover, could not discover, and
8    were prevented from discovering the wrongdoing complained of herein in that Plaintiff
9    and members of the Class relied upon Defendants' reputation for honesty and trust in
10   their business operations

11       **A.    Numerosity of the Class**

12       76.    The members of the Class are so numerous as to render their individual
13   joinder impracticable. Although the precise number of Class Members is unknown, based
14   upon information and belief, Plaintiff alleges that the Class contains thousands of
15   members.

16       77.    The true number of Class Members is known by Defendant FCAUS
17   however, and, thus, may be notified of the pendency of this action through electronic
18   mail, first class mail and/or by published notice. Plaintiff is informed and believes that
19   there are at least 15,000 purchasers in the Class—reflecting the number of Class Vehicles
20   Defendant FCAUS recalled.

21       78.    Plaintiff is informed and believes that the at least 15,000 purchasers in the
22   Class Members of the Class can be identified from Defendants records and notified of the
23   pending action by e-mail, mail, and supplemental published notice, if necessary.

24       **B.    Existence and Predominance of Common Questions of Fact and**
25            **Law**

26       79.    There are questions of law and fact common to the Class. These questions
27   predominate over any questions affecting only individual Class Members. These common
28   legal and factual issues include, but are not limited to:

-14-

a. Whether Defendants engaged in the conduct alleged herein;

b. Whether Defendants had knowledge of the heightened fire risk in the Class Vehicles when they placed Class Vehicles into the stream of commerce in the United States;

c. When Defendants became aware of the defect causing fires in Class Vehicles;

d. Whether Defendants knowingly failed to disclose the existence and cause of the defect in the Class Vehicles;

e. Whether Defendants knowingly concealed defect(s) in the Class Vehicles;

f. Whether Defendants' conduct as alleged herein violates consumer protection laws and/or other laws including warranty laws and obligations;

g. Whether Defendants' conduct as alleged herein violates the other laws as set forth in the causes of action;

h. Whether Plaintiff and Class Members have suffered an ascertainable loss as a result of the defect;

i. Whether Plaintiff and Class Members are entitled to damages and equitable relief.

**C.** **Typicality**

80. Plaintiff' claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendant's substantially uniform misconduct as described above.

81. The Plaintiff representing the Class is advancing the same claims and legal theories on behalf of herself and all other members of the Class that they represent, and there are no defenses that are unique to Plaintiff.

82. The claims of the Plaintiff and the Class Members arise from the same operative facts and are based on the same legal theories.

-15-

1

### D.     Adequacy of Representation

2      83.     Plaintiff is an adequate Class representatives because her interests do not

3   conflict with the interests of the other members of the Class she seeks to represent and

4   Plaintiff has retained counsel competent and experienced in complex class action

5   litigation; and Plaintiff intend to prosecute this action vigorously.

6      84.     The Class' interests will be fairly and adequately protected by Plaintiff and

7   her counsel.

8

### E.     Predominance and Superiority

9      85.     This suit may be maintained as a class action because questions of law and

10   fact common to the Class predominate over the questions affecting only individual

11   members of the Class and a class action is superior to other available means for the fair

12   and efficient adjudication of this dispute.

13      86.     The damages suffered by individual class members are small compared to

14   the burden and expense of individual prosecution of the complex and extensive litigation

15   needed to address Defendant's conduct.

16      87.     In addition, individualized litigation increases the delay and expense to all

17   parties and to the court system resulting from complex legal and factual issues of the case.

18   Individualized litigation also presents a potential for inconsistent or contradictory

19   judgments.

20      88.     By contrast, the class action device presents a potential for management

21   difficulties; allows the hearing of claims which might otherwise go unaddressed because

22   of the relative expense of bringing individual lawsuits; and provides the benefits of single

23   adjudication, economies of scale, and comprehensive supervision by a single court.

24      89.     The Class Plaintiff contemplate the eventual issuance of notice to the

25   proposed Class Members setting forth the subject and nature of the instant action. Upon

26   information and belief, Defendant's own business records and electronic media can be

27   utilized for the contemplated notices to ascertain the Class.

28

-16-

90.     This action is properly maintained as a Class Action *inter alia,* pursuant to California Code of Civil Procedure Section 382 in that:

a.     Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

i.     inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

ii.     adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b.     The parties sued by the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

c.     Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

i.     The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

ii.     The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

iii.     The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

-17-

1            iv.     The difficulties likely to be encountered in the management of

2            a Class Action.

3                  **VI.**    **CAUSES OF ACTION**

4

**FIRST CAUSE OF ACTION**

5

**(Violation of California Business & Professions Code Sections 17200, et seq.–
Unfair Business Practices Act)
(Against all Defendants)**

6

7         91.     Plaintiff re-alleges and incorporates by reference each of the allegations

8 contained in the preceding paragraphs of this Complaint as though fully alleged in this

9 Cause of Action.

10         92.     California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)

11 (hereinafter the "UCL") protects consumers from unlawful, unfair or fraudulent business

12 acts or practices.

13         93.     At times, places, and involving participants known exclusively to Defendants

14 and third parties and concealed from Plaintiff, Defendants have engaged in unlawful,

15 unfair, and fraudulent business practices in violation of the UCL as set forth above.

16         94.     Defendants' business practices have been and continue to be deceptive and

17 violate Section 17200 and remain likely to deceive consumers in California.

18         95.     Defendants overstated the utility and safety of Class Vehicles by marketing

19 the Class Vehicles as having sufficient safety and security features to keep consumers safe,

20 knowing that such representations were false.

21         96.     Defendants knew or should have known, and presently know that false and

22 misleading statements about Class Vehicles were made and have misled the public.

23         97.     Defendants made or disseminated false and misleading statements or

24 caused false and misleading statements to be made or disseminated.

25         98.     The misrepresentations and omissions alleged herein are **fraudulent**, and

26 thus amount to unfair competition as set forth by the Unfair Competition Law, including

27 but not limited to the fact that Defendants implemented a deceptive marketing campaign

28 that overstated the safety and security features of the Class Vehicles.

-18-

99. Defendants' conduct and the harm it caused, and continues to cause, is not reasonably avoidable by Plaintiff and Class Members.

100. Due to its deceptive acts and omissions, Defendants knew or had reason to know that Plaintiff and Class Members would not have reasonably known or discovered the risk of spontaneous combustion and inability to freely park their cars.

101. The misrepresentations and omissions alleged herein are **unlawful**, and thus amount to unfair competition as set forth by the Unfair Competition Law, in that they violate, among other things, California Business and Professions Code § 17500, and several other common law violations, including, deceit, fraud and misrepresentation, and unjust enrichment. These unlawful practices include, but are not limited to:

a. Defendants misrepresented the source, sponsorship, approval, or certification of goods or services in violation of the Consumer Legal Remedies Act, Civ. Code Section 1770(a)(2);

b. Defendants represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have in violation of the Consumer Legal Remedies Act, Civ. Code Section 1770(a)(5);

c. Defendants represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another in violation of the Consumer Legal Remedies Act, Civ. Code Section 1770(a)(7);

d. Defendants made or disseminated, directly or indirectly, untrue, false, or misleading statements about the utility and safety of Class Vehicles, or causing untrue, false, or misleading statements about the utility and safety of Class Vehicles to be made or disseminated to the general public in violation of the UCL.

102. As set forth above, Defendants misrepresented the utility and safety of Class Vehicles. Defendant disseminated these untrue and misleading misrepresentations with the intent to boost the sales and profits of Defendant.

-19-

103. The misrepresentations and omissions alleged herein are **unfair**, and thus amount to unfair competition as set forth by the Unfair Competition Law, in that they are immoral, oppressive, unscrupulous and substantially injurious to consumers.

104. The injury to Plaintiff and Class Members caused by Defendants' actions, greatly outweighs any countervailing benefits to consumers or competition under all of the circumstances.

105. As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits, which they would not have received if they had not engaged in the violations of the UCL described in this complaint.

106. As a direct and proximate result of the foregoing acts and practices, Defendants have obtained an unfair advantage over similar businesses that have not engaged in such practices.

107. As a direct and proximate cause of Defendants' violations of the Unfair Competition Law, Plaintiff suffered injury and monetary harm because their Class Vehicle is at heightened risk of fire, and they cannot freely park his vehicle.

108. Plaintiff and the Class Members, and each of them, have been damaged by said practices.

109. Pursuant to California Business and Professions Code §§ 17200 and 17203, Plaintiff, on behalf of herself and all others similarly situated, seeks relief as prayed for below.

110. As a result of Defendants' violations of the Business & Professions Code section 17200, *et seq.,* Plaintiff and the Class are entitled to equitable relief in the form of full restitution.

111. Plaintiff and the Class also seek and order enjoining Defendant from continuing its unlawful business practices and from such future conduct.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

-20-

1

2

3

## SECOND CAUSE OF ACTION
### (Violation of California Business & Professions Code Sections 17500, *et seq.*– False Advertising Law)
### (Against all Defendants)

112. Plaintiff re-allege and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged in this Cause of Action.

113. Business and Professions Code Section 17500, *et seq.*, also known as California False Advertising Law (hereinafter "FAL"), makes it unlawful for a business to make, disseminate, or cause to be made or disseminated to the public "any statement, concerning . . . real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

114. As alleged above, at times, places, and involving participants known exclusively to Defendants, Defendants violated the FAL by making and disseminating false or misleading statements about the utility and safety of Class Vehicles, or by causing false or misleading statements about the utility and safety of Class Vehicles to be made or disseminated to the public.

115. Defendants' marketing scheme, set forth in this Complaint, are false and deceptive and violate Section 17500 because Defendants, in furtherance of the scheme, made misrepresentations and omissions regarding the safety and utility of Class Vehicles to deceive consumers.

116. Defendants overstated the utility and safety of Class Vehicles by marketing the Class Vehicles as having over 100 safety and security features to keep consumers safe, and as the most family friendly minivan in its class, knowing that such representations were false.

117. Defendants disseminated materially misleading advertisements and deceptive information in print, online, and television formats, and omitted material information, as discussed throughout the complaint, for purposes of inducing customers

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-21-

1   to purchase the Class Vehicles, in violation of California Business and Professions Code

2   § 17500, *et seq.*

3       118.   At the time it made or disseminated its false and misleading statements or

4   caused these statements to be made or disseminated, Defendants knew or should have

5   known that the statements were false and misleading and therefore likely to deceive the

6   public.

7       119.   In addition, Defendants knew and should have known that their false and

8   misleading advertising created a false or misleading impression of the risks and benefits

9   purchasing a Class Vehicle.

10      120.   As a result of Defendants' violations, Plaintiff and Class Members are

11  entitled to equitable relief in the form of full restitution of all monies paid for the sales

12  price of the Class Vehicles, diminished value of the Class Vehicles, and/or disgorgement of

13  the profits derived from Defendant's false and misleading advertising.

14      121.   Plaintiff also seeks an order enjoining Defendants from such future conduct.

15      WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

16                    **THIRD CAUSE OF ACTION:**
                      **(Fraud and Deceit)**
17                    **(Against all Defendants)**

18      122.   Plaintiff re-allege and incorporates by reference each of the allegations

19  contained in the preceding paragraphs of this Complaint as though fully alleged in this

20  Cause of Action.

21      123.   Based on Defendants' conduct as discussed above, Defendants have engaged

22  in fraud and deceit as set forth in California Civil Code §§ 1710, and 3294.

23      124.   Defendants overstated the utility and safety of Class Vehicles by marketing

24  the Class Vehicles as having over 100 safety and security features to keep consumers safe,

25  and as the most family friendly minivan in its class, knowing that such representations

26  were false.

27      125.   The misrepresentations, nondisclosure, and/or concealment of material

28  facts made by Defendants to Plaintiff and the members of the Class, as set forth above,

                                      -22-

were known, through reasonable care should have been known, or were made recklessly without disregard for its truth, by Defendants to be false and material and were intended by Defendants to mislead Plaintiff and the Class Members.

126. Plaintiff and the Class Members reasonably relied on Defendants' misrepresentations, but were actually misled and deceived, and were induced by Defendants to purchase the Class Vehicles which they could not otherwise have purchased.

127. As a result of the conduct of Defendants, Plaintiff and the Class members have been harmed. Plaintiff and Class Members' reliance was a substantial factor in causing them harm because they were required to stop using Class Vehicles and fear immediate catastrophic injury to herself and passengers of the Class Vehicles, and people and property surrounding the Class Vehicle.

128. Plaintiff and the Class Members have reasonably relied on the material misrepresentations and omissions made by Defendants and have been damaged thereby.

129. As a direct and proximate result of Defendants' fraud, Plaintiff have sustained damages in the amount to be determined at trial.

130. In addition to such damages, Plaintiff seek punitive or exemplary damages pursuant to California Civil Code § 3294 in that Defendants engaged in "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## FOURTH CAUSE OF ACTION:
### (Negligent Misrepresentation)
### (Against all Defendants)

131. Plaintiff re-allege and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged in this Cause of Action.

-23-

132.     Defendants overstated the utility and safety of Class Vehicles by marketing the Class Vehicles as having over 100 safety and security features to keep consumers safe, and as the most family friendly minivan in its class.

133.     Defendants' representations were not true because the Class Vehicles are unsafe, unsuitable for any family.

134.     Plaintiff and the Class Members cannot safely park their Class Vehicles at home or near buildings, nor can they plug them in due to a heightened risk of fire.

135.     Defendants had no reasonable grounds for believing the representations were true when it made it.

136.     The misrepresentations, nondisclosure, and/or concealment of material facts made by Defendants to Plaintiff and the members of the Class, as set forth above, were intended by Defendants to mislead Plaintiff and the Class Members.

137.     Plaintiff and the Class Members reasonably relied on Defendants' misrepresentations, but were actually misled and deceived, and were induced by Defendants to purchase the Class Vehicles which they could not otherwise have purchased.

138.     Plaintiff and Class Member's reliance was a substantial factor in causing them harm because they were required to stop using Class Vehicles and fear immediate catastrophic injury to herself and passengers of the Class Vehicles, and people and property surrounding the Class Vehicle.

139.     Plaintiff and the Class members justifiably relied on Defendant's misrepresentations and have been damaged thereby.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## FIFTH CAUSE OF ACTION:
### (Unjust Enrichment)
### (Against all Defendants)

140.     Plaintiff re-allege and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged in this Cause of Action.

-24-

141.   Plaintiff and Class Members paid Defendants the value of non-defective, fully operational Class Vehicles with no risk of fires and no defects.

142.   In exchange, Defendants provided Plaintiff and Class Members with defective vehicles that are not fully operational and cannot be operated due to a heightened risk of fire.

143.   Further, Defendants provided Plaintiff and Class Members with Class Vehicles that are in need of further repair or recall, contrary to its advertisements assuring that consumers' safety and security is what matters most.

144.   Plaintiff provided Defendants with the value of vehicles with no defects.

145.   Defendants knew or had reason to know that the defective vehicles are not fully operational and cannot be operated due to a heightened risk of fire.

146.   As such, Plaintiff and Class Members conferred value upon Defendants which would be unjust for Defendants to retain.

147.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and Class Members have suffered and continue to suffer various injuries.

148.   As such, they are entitled to damages in the amount of Plaintiff's monetary loss, and restitution of all amounts by which Defendants were enriched through its misconduct.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## SIXTH CAUSE OF ACTION:
### (Negligence)
### (Against all Defendants)

149.   Plaintiff re-allege and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged in this Cause of Action.

150.   Defendants had a duty to its consumers to exercise a degree of care that a reasonable person in the like position would exercise. Defendants failed to do so.

151.   Among other things, Defendants had a duty to follow industry custom and standards imposed by federal regulations, to assess the foreseeability and likelihood of an

-25-

1  injury, and to assess the seriousness and frequency of the injuries threatened by the Class
2  Vehicles.

3       152.    Defendants breached their duty to Plaintiff and the Class Members.

4       153.    Among other things, and without limiting the generality of the foregoing,
5  both Defendants failed to (1) inspect the Class Vehicles adequately, (2) Defendant FCAUS
6  failed to design Class Vehicles properly, and (3) both Defendants failed to test the Class
7  Vehicles adequately.

8       154.    Defendants' negligence was a substantial factor in causing Plaintiff and
9  Class Members to suffer economic, and potentially fatal harm as well as other damages to
10  be proven at the time of the trial.

11       155.    Plaintiff and Class Members were harmed because they were in fear and at
12  risk of immediate catastrophic injury to herself and passengers of the Class Vehicles, and
13  people and property surrounding the Class Vehicle.

14       156.    As a direct and legal result of the wrongful acts and omissions of Defendant,
15  Plaintiff and Class Members were harmed.

16      WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

17
18
19

**SEVENTH CAUSE OF ACTION**
**(Violation of 15 U.S.C. Section 2301, _et seq._ –**
**the Magnuson-Moss Warranty Act)**
**(Against all Defendants)**

20       157.    Plaintiff re-allege and incorporate by reference each of the allegations
21  contained in the preceding paragraphs of this Complaint as though fully alleged in this
22  Cause of Action.b Plaintiff and Class Members are "consumers" within the meaning of the
23  Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). Defendant FCAUS is a "supplier" and
24  a "warranter" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. §
25  2301(4)-(5). Defendant AARON is a "supplier" and a "warranter" within the meaning of
26  the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

27       158.    The Class Vehicles are a "consumer product" within the meaning of the
28  Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(1).

-26-

1   159.   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(d)(1) provides for a

2   cause of action for any consumer who is damaged by the failures of a warrantor to comply

3   with a written warranty.

4   160.   Pursuant to 15 U.S.C. § 2310(e), Plaintiff and the Class are not required to

5   provide Defendants notice of this class action and an opportunity to cure until the time the

6   Court determines the representative capacity of Plaintiff pursuant to FRCP 23.

7   161.   Defendants' representations as described herein that Class Vehicles sold to

8   Plaintiff and Class Members have the safety and security of the minivan are written

9   warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

10   162.   Through written and implied warranties, Defendants warranted that the

11   Class Vehicles are free from defects, of merchantable quality, and fit for their ordinary and

12   represented use.

13   163.   Defendants breached the warranties as described herein. Contrary to

14   Defendants' representations, Plaintiff and other Class Members are faced with the choice

15   of risking potential car fires, or refraining from recharging their vehicles and parking

16   them away from structures and other vehicles.

17   164.   As such, the Class Vehicles do not perform as promised and are unfit and

18   unreasonably dangerous for ordinary use.

19   165.   Defendants knew or should have known, of the defect and potential fire risk

20   in the Class Vehicles.

21   166.   Defendants knew or should have known, that its representations regarding

22   the capabilities of the Class Vehicles were false yet proceeded with a multi-year

23   advertising campaign through which Defendant FCAUS promised consumers that the

24   Class Vehicles were family friendly, secure, and safe.

25   167.   Plaintiff and Class Members were damaged as a result of the breach of

26   warranty because they received a product incapable of performing as Defendants

27   represented without extreme risks to Plaintiff and Class Members' safety, rendering the

28   Class Vehicles less valuable than represented.

-27-

168.   Plaintiff and the Class are entitled to damages caused by Defendants' breaches of the warranties, including economic damages based upon either a return of Plaintiff Class Members purchase price; and/or the difference between the price paid for the Class Vehicle as warranted and the actual value of the Class Vehicle as delivered, and consequential damages.

169.   In addition, Plaintiff and the Class are entitled to reasonable attorneys' fees and costs as determined by the Court.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

**EIGHTH CAUSE OF ACTION**
**(Breach of Express Written Warranty –**
**California Civil Code Sections 179.2 (a) & 1794)**
**(Against all Defendants)**

170.   Plaintiff re-allege and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged in this Cause of Action.

171.   Defendants warranted to Plaintiff and Class Members through written statements and advertisements that the Class Vehicles would work safely and securely, and could be charged safely.

172.   The Class Vehicles that Plaintiff and Class Members purchased from Defendants did not perform safely and securely, nor can be charged safely.

173.   Defendants breached this warranty by knowingly selling vehicles equipped with defective product causing spontaneous combustion and fires.

174.   Defendants failed to repair the Class Vehicles as required by the warranty.

175.   The failure of the Class Vehicles to be as represented was a substantial factor in causing Plaintiff and Class Members' harm because they were required to stop using Class Vehicles and fear immediate catastrophic injury to herself and passengers of the Class Vehicles, and people and property surrounding the Class Vehicle.

176.   Plaintiff and the California Class have been damaged as a direct and proximate result of Defendants' breaches in that the Class Vehicles purchased by Plaintiff

-28-

1   and the Class Members were and are worth far less than what Plaintiff and the Class

2   Members paid to purchase or lease them.

3       177.   The Class Vehicles were defective as herein alleged at the time they left

4   Defendant FCAUS's factories, and the vehicles reached Plaintiff and Class Members

5   without substantial change in the condition in which they were sold.

6       178.   As a direct and proximate result of these breaches, Plaintiff and the Class

7   Members have suffered various injuries, including a diminution of value in the Class

8   Vehicles.

9       179.   Plaintiff and Class Members have been harmed by Defendants' failure to

10  comply with its obligations under the implied warranty.

11      180.   Plaintiff and the Class Members have suffered an injury in fact and have

12  suffered an economic loss by, *inter alia*, (1) purchasing a product they never would have

13  leased or purchased; (2) leasing or purchasing an inferior product whose nature and

14  characteristics render it of a lesser value than represented; (3) incurring costs for

15  diminished resale value of the Class Vehicles purchased or leased; (4) leasing and/or

16  purchasing a product that poses a danger to the health and safety of the public;

17  (5) including increased costs to repair the Class Vehicles purchased, and (f) incurring

18  costs for loss of use.

19      181.   Accordingly, the Court must issue an injunction restraining and enjoining

20  Defendant from sending or transmitting false and misleading advertising to individuals or

21  entities concerning the purported safety and quality of the Class Vehicles from Defendant.

22      WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

23
### NINTH CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability –
24  ### California Civil Code Sections 1791.1; 1794; & 1795.5)
### (Against all Defendants)
25

26      182.   Plaintiff re-allege and incorporate by reference each of the allegations

27  contained in the preceding paragraphs of this Complaint as though fully alleged in this

28  Cause of Action.

-29-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

183.   Pursuant to Civil Code section 1792, the sale or lease of the Class Vehicles were accompanied by Defendants' implied warranty of merchantability.

184.   Pursuant to Civil Code section 1791.1, the duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendants, except that the duration is not to exceed one-year.

185.   Pursuant to Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Class Vehicles will comply with each of the following requirements: (1) The Vehicle will pass without objection in the trade under the contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

186.   Plaintiff and Class Members bought or leased their Class Vehicles from Defendants. At the time of purchase or lease, Defendants were in the business of selling or leasing Class Vehicles and held itself out as having special knowledge or skill regarding Class Vehicles. At the time of purchase, or within one-year thereafter, the Class Vehicles contained or developed the defect and risk of spontaneous combustion of Class Vehicles set forth above.

187.   The existence of each of these issues constitutes a breach of the implied warranty because the Class Vehicles (1) do not pass without objection in the trade under the contract description, (2) are not fit for the ordinary purposes for which such goods are used, (3) are not adequately contained, packaged, and labelled, and (4) do not conform to the promises or affirmations of fact made on the container or label.

188.   The failure of Class Vehicles to have the expected quality was a substantial factor in causing Plaintiff and Class Member's harm and they therefore bring this Cause of Action pursuant to Civil Code section 1794.

189.   Plaintiff and Class Members have been harmed by Defendants' failure to comply with its obligations under the implied warranty.

190.     Plaintiff and the Class Members have suffered an injury in fact and have suffered an economic loss by, *inter alia*, (1) purchasing a product they never would have leased or purchased; (2) leasing or purchasing an inferior product whose nature and characteristics render it of a lesser value than represented; (3) incurring costs for diminished resale value of the Class Vehicles purchased or leased; (4) leasing and/or purchasing a product that poses a danger to the health and safety of the public; (5) including increased costs to repair the Class Vehicles purchased, and (f) incurring costs for loss of use.

191.     Accordingly, the Court must issue an injunction restraining and enjoining Defendant from sending or transmitting false and misleading advertising to individuals or entities concerning the purported safety and quality of the Class Vehicles from Defendant.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, demands judgment against and special relief from Defendants as follows:

1.     An order certifying that the action may be maintained as a Class Action as defined herein and appointing Plaintiff and her counsel of record to represent the Class as defined above;

2.     Determination that FCAUS is financially responsible for all Class notice and administration of Class relief;

3.     An order enjoining Defendants from future violations of the CLRA, Business & Professions Code section 17200, *et seq.*, Business & Professions Code section 17500, *et seq,* as alleged herein;

4.     An order awarding Plaintiff and the Class Members actual, general and special, incidental, compensatory, consequential damages, and restitution and/or disgorgement;

5.     An order awarding Plaintiff and the Class Members punitive damages;

6.     For prejudgment and post-judgment interest upon such judgment at the

-31-

maximum rate provided by law;

7.    Reasonable attorneys' fees and costs; and

8.    Such other and further relief that this Court may deem proper.

May 25, 2022                                    **JENKINS MULLIGAN & GABRIEL LLP**

By: _____
     Daniel J. Mulligan
     Attorneys For Plaintiff and the Class

-32-

1

# DEMAND FOR JURY TRIAL

2      Plaintiff hereby demands a jury trial as to all claims which may be so

3   decided.

4

5

6   May 25, 2022                    **JENKINS MULLIGAN & GABRIEL LLP**

7

8

9                              By: _____
                                     Daniel J. Mulligan
10                                   Attorneys For Plaintiff and the Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-33-

Case 2:22-cv-11892-DML-EAS ECF No. 1-1, PageID.43 Filed 07/19/22 Page 37 of 68
Electronically FILED by Superior Court of California, County of Riverside on 06/01/2022 01:18 PM
Case Number CVRI2202212 0000023103571 - W. Samuel Hamrick Jr., Executive Officer/Clerk of the Court By Amia Brown, Clerk

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

☐ **BANNING** 311 E. Ramsey St., Banning, CA 92220
☐ **BLYTHE** 265 N. Broadway, Blythe, CA 92225
☐ **CORONA** 505 S. Buena Vista, Rm. 201, Corona, CA 92882
☐ **MORENO VALLEY** 13800 Heacock St., Ste. D201, Moreno Valley, CA 92553

☐ **MURRIETA** 30755-D Auld Rd., Suite 1226, Murrieta, CA 92563
☐ **PALM SPRINGS** 3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262
☒ **RIVERSIDE** 4050 Main St., Riverside, CA 92501

**RI-CI032**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar Number and Address)*
Daniel J. Mulligan [103129]
Jenkins Mulligan & Gabriel LLP
4079 Governor Drive, 5015
San Diego, CA 92122

TELEPHONE NO: 858-529-2372   FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*: dan@jmglawoffices.com
ATTORNEY FOR *(Name)*: Plaintiff Christine Trovato

*FOR COURT USE ONLY*

PLAINTIFF/PETITIONER: Christine Trovato

DEFENDANT/RESPONDENT: Aaron Chrysler of Norco, et al.

CASE NUMBER:
CVRI2202212

## CERTIFICATE OF COUNSEL

The undersigned certifies that this matter should be tried or heard in the court identified above for the reasons specified below:

☒   The action arose in the zip code of: <u>92860</u>

☐   The action concerns real property located in the zip code of:

☐   The Defendant resides in the zip code of:

For more information on where actions should be filed in the Riverside County Superior Courts, please refer to Local Rule 3115 at www.riverside.courts.ca.gov.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date   May 31, 2022

Daniel J. Mulligan
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY MAKING DECLARATION)

▶ _____ (SIGNATURE)

Approved for Mandatory Use
Riverside Superior Court
RI-CI032 [Rev. 07/15/21]

**CERTIFICATE OF COUNSEL**

Page 1 of 1
Local Rule 3117
riverside.courts.ca.gov/localfrms/localfrms.shtml

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AARON CHRYSLER OF NORCO, formerly known as BROWNING DODGE, a California Corp.;
FIAT CHRYSLER AUTOMOBILES (FCA) US, LLC, a Delaware Corp.; and DOES1-50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CHRISTINE TROVATO, an individual on behalf of herself and all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Riverside County Superior Court, 4050 Main Street, Riverside, CA 92501 | CASE NUMBER: *(Número del Caso):* CVRI 2202212 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Daniel J. Mulligan [103129] Jenkins Mulligan & Gabriel LLP, 4079 Governor Dr., 5015, San Diego, CA 92122; 858-529-2372

| DATE: *(Fecha)* | 06/01/2022 | Clerk, by *(Secretario)* | | , Deputy *(Adjunto)* |
|---|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

GC68150(g)

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

    under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Daniel J. Mulligan [103129]; Jenkins Mulligan & Gabriel LLP<br>4079 Governor Dr., 5015, San Diego, CA 92122<br><br>TELEPHONE NO.: 858-529-2372    FAX NO. *(Optional):*<br>E-MAIL ADDRESS: dan@jmglawoffices.com<br>ATTORNEY FOR *(Name):* Plaintiff Christine Trovato | **FOR COURT USE ONLY** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS: 4050 Main Street
CITY AND ZIP CODE: Riverside, CA 92501
BRANCH NAME: Main

CASE NAME:

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| **[x] Unlimited**    **[ ] Limited**<br>(Amount      (Amount<br>demanded     demanded is<br>exceeds $25,000)   $25,000 or less) | [ ] Counter     [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CVRI 2202212<br><br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Construction defect (10) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [x] Mass tort (40) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [x] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [x] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [x] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary   b. [x] nonmonetary; declaratory or injunctive relief   c. [x] punitive
4. Number of causes of action *(specify):* 9
5. This case [x] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 27, 2022

Daniel J. Mulligan

_____(TYPE OR PRINT NAME)_____     (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501

**Case Number:**   CVRI2202212

**Case Name:**   TROVATO vs AARON CHRYSLER OF NORCO

## NOTICE OF DEPARTMENT ASSIGNMENT

The above entitled case is assigned to the Honorable Craig Riemer in Department 1  for All Purposes.

Any disqualification pursuant to CCP section 170.6 shall be filed in accordance with that section.

The court follows California Rules of Court, Rule 3.1308(a)(1) for tentative rulings (see Riverside Superior Court Local Rule 3316).  Tentative Rulings for each law and motion matter are posted on the internet by 3:00 p.m. on the court day immediately before the hearing at http://riverside.courts.ca.gov/tentativerulings.shtml.  If you do not have internet access, you may obtain the tentative ruling by telephone at (760) 904-5722.

To request oral argument, you must (1) notify the judicial secretary at (760) 904-5722 and (2) inform all other parties, no later than 4:30 p.m. the court day before the hearing.  If no request for oral argument is made by 4:30 p.m., the tentative ruling will become the final ruling on the matter effective the date of the hearing.

The filing party shall serve a copy of this notice on all parties.

| | |
|---|---|
|  | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
| | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

Dated: 06/02/2022

W. SAMUEL HAMRICK JR.,
Court Executive Officer/Clerk of Court

by: _____

A. Brown, Deputy Clerk

CI-NODACV
(Rev. 02/16/21)

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

| CASE TITLE: Trovato v. Aaron Chrysler of Norco | Department 1 | **F I L E D** |
|---|---|---|
| CASE NO.:   CVRI2202212 | | SUPERIOR COURT OF CALIFORNIA COUNTY OF RIVERSIDE |
| DATE:   June 4, 2022 | | JUN 0 7 2022 |
| PROCEEDING:  Class Action Case Management Order #1 | | L. Howell |

Unless and until ordered otherwise, this Case Management Order ("CMO") shall govern the management of this case.

A.   <u>IN GENERAL</u>

1.   The Court finds that this is a complex case. (Cal. Rules of Court, rules 3.400(c)(6) and 3.403(b).) The clerk shall impose fees accordingly. The court will entertain objections to this designation at the next Case Management Conference or status conference.

2.   This case has been assigned to Department 1 for all purposes, including case management, law and motion, and trial.

3.   The plaintiff shall serve a copy of this CMO on any defendants who had not yet appeared at the time this order was filed, and shall file proof of service promptly thereafter.

4.   Any party who has appeared in the action at the time this CMO is entered has 15 days from the service of the CMO in which to object to the CMO. Any party appearing after the entry of the CMO shall have 15 days from that initial appearance in which to object to the CMO. Any such objections shall be in writing and shall be presented to the Court in the form of a noticed motion to amend the CMO. Any party that fails to file such a motion within those 15 days forfeits its objections to the CMO.

5.   If the Court issues an order to show cause why the Court should not take some specified action, the party to whom the OSC is directed shall respond with a written declaration filed no later than five court days before the hearing on the OSC. (RSC Local Rule 3116.) The Court may deem the failure to file a timely declaration, by itself, to constitute an admission by the responding party that good cause to avoid the threatened sanction or other action does not exist. (RSC Local Rule 3116.)

6.   The Court will not grant any relief based on a stipulation of a party that has not yet paid its first-appearance fee.

7.   If plaintiff's counsel intends to ask to recover attorney's fees incurred in prosecuting this action, plaintiff's counsel should maintain contemporaneous time records for this case from this date forward, in time increments of no more than a tenth of an hour.

## B.   SERVICE AND RESPONSIVE PLEADINGS

1.   All defendants named at the time of the filing of this CMO shall be served no later than 30 days, and proofs of service filed no later than 7 days, before the case management conference.

2.   Any defendant named after the filing of this CMO shall be served, and proof of service shall be filed, within 60 days of the filing of the pleading, amendment, or amended pleading naming that defendant.  (Modifying Cal. Rules of Court, rule 3.110(b).)

3.   The power of the plaintiff to grant extensions of time in which to file responsive pleadings is subject to the limits in California Rules of Court, rule 3.110(d), except that the maximum extension by counsel is extended to either 30 days or five court days before the next case management conference, whichever is shorter.

4.   If a defendant fails to file an answer or any other responsive pleading within 30 days of service, or within any extension granted by the plaintiff or the Court, the plaintiff must request entry of default not later than 30 days after the time for service of the responsive pleading has elapsed.  (Modifying Cal. Rules of Court, rule 3.110(g).)

5.   The plaintiff shall serve a copy of this CMO simultaneously with any summons and complaint served after the date of entry of this order.

6.   The Court should not be asked to evaluate the sufficiency of a pleading until the pleader has stated his or her case or defense as strongly as possible.  Therefore, if a party is considering either an amendment of a pleading or a challenge to an opponent's pleading:

   a.   The parties shall strictly comply with Code of Civil Procedure sections 430.41, 435.5, and 439.  Before filing a demurrer, motion to strike, or motion for judgment on the pleadings, the parties shall meet and confer to determine whether the challenge to the pleading is arguably meritorious and, if so, whether the parties will stipulate to leave to amend being granted to allow the pleading to be amended in an attempt to cure the asserted defect.

   b.   Any party who believes that his or her pleading needs to be amended shall meet and confer with the opposing party to discuss whether the amendment is arguably necessary and whether the opposing party will stipulate to the filing of the amended pleading.  Consent to such an amendment shall not be unreasonably withheld.

   c.   The parties "shall meet and confer in person or by telephone" (§§ 430.41, subd. (a), 435.5, subd. (a), & 439, subd. (a)) to discuss any arguable defects in the pleadings, and whether those potential defects can be resolved or diminished by amendment.  Merely sending a letter or email to opposing counsel does not constitute a meeting, and thus does not comply with this order. Counsel for the moving or demurring party must follow up on any such written communication with an oral request either by telephone or in person.

   d.   Any challenge to a pleading, and any motion for leave to amend a pleading, must be accompanied by a declaration describing those meet-and-confer efforts, including

the date of the meeting, whether it was in person or by telephone, the persons involved, and the issues discussed.  The declaration shall also describe any offer to amend and any response to that offer.

e.   In the absence of evidence of such an effort to meet and confer, the Court may either (i) continue the hearing until such an effort has been made or (ii) take the hearing off calendar and direct the filing of a new motion or demurrer.

## C.   MEDIATION

The court expects the parties to engage in private mediation at the earliest practicable time, i.e., as soon as all parties have obtained – preferably through informal means – sufficient information from the opposing party(s) to enable them to engage in meaningful mediation.

## D.   CASE MANAGEMENT AND THE CASE PROGRESSION PLAN

1.   The Court finds that this case involves exceptional circumstances that are likely to prevent this case from meeting the goals and deadlines set by California Rules of Court, rule 3.713(b). Accordingly, this case is exempt from those case disposition time goals.  (*Id.*, rule 3.714(c)(1).)  With the input from the parties, the Court shall develop a case progression plan with the goal of disposing of the case within three years. (*Id.*, rule 3.714(c)(2).)

2.   Prior to the first Case Management Conference, counsel for the parties shall meet and confer regarding the joint statement required by RSC Local Rule 3160.  Unless counsel have opposed each other in some other case within the last year, that meeting shall be either in person or by videoconference.

3.   Not later than five court days in advance of the first Case Management Conference, all parties that have appeared shall file the joint statement required by rule 3160 instead of Judicial Council form CM-110 [case management statement]. In addition to the items listed in Rule 3160, the statement shall:

a.   Advise the Court whether any of the parties or their counsel are aware of any other class action, putative class action, or other type of representative or collective action in this or any other jurisdiction that asserts claims similar to those here on behalf of a class, putative class, or other group of individuals that in any way overlaps with the putative class alleged here.

b.   Describe the parties' case progression plan, which shall include at least (i) a statement as to whether the parties agree to pursue mediation and (ii) a plan of the informal discovery and any formal discovery to be conducted in preparation for mediation, for class certification, or for both.

4.   Not later than five court days before any subsequent Case Management Conference, status conference, or trial setting conference, the parties shall file a joint statement that:

a.  Describes the status of the case, including (i) the results of any mediation or other settlement efforts, (ii) the degree to which the case progression plan has been implemented, and (iii) any changes or additions to the case progression plan; and

b.  Identifies any issues or concerns that either party wishes to discuss with the Court.

5.  If mediation is unsuccessful, the case progression plan shall be expanded prior to the next status conference to include (a) a pre-certification discovery schedule, (b) a deadline for filing a motion for class certification, and (c) a proposed briefing schedule for that motion.

6.  Lead counsel shall appear at the Case Management Conference and status conferences.


E.  DISCOVERY

1.  Counsel are encouraged to engage in informal discovery rather than relying on formal discovery. The Court does not stay or otherwise limit informal discovery.

2.  The discovery stay under RSC Local Rule 3160(B) is vacated as to interrogatories concerning the identity of and contact information for members of the putative class. Any such interrogatories propounded by the plaintiff to the defendant shall be accompanied by (a) a proposed *Belaire West* notice, (b) the name of a proposed third-party administrator, and (c) a proposal regarding the allocation of the cost of the notice.

3.  All other formal discovery concerning class-certification issues is stayed pending further order of the court. Requests for leave to propound formal discovery concerning class-certification issues may be made either by submitting a declaration and proposed order or by making an oral request at status conferences or at informal conferences with the Court in accordance with paragraph 5 below.  The Court will grant such a request if the applicant demonstrates:

a.  That the parties have met and conferred to discuss both (i) the scope and sources of the information needed either to permit a meaningful mediation or to support or oppose a class-certification motion and (ii) whether the parties would agree to exchange that information informally;

b.  That the parties were unable to reach an agreement; and

c.  The discovery is reasonably necessary either (i) to permit a meaningful mediation or (ii) to make or oppose a certification motion.

4.  All formal discovery concerning solely the merits of the plaintiff's claims (as opposed to whether a class should be certified to prosecute those claims) is stayed until a motion regarding class certification has been granted.

5.  No discovery motions may be filed without leave of court.  If a discovery dispute arises:

a.  The parties shall meet and confer either in person or by telephone in a good-faith effort to resolve the dispute.  If, despite that effort, the parties are unable to resolve the dispute, then counsel shall send an email to this department at

Page 4 of 22

dept1@riverside.courts.ca.gov and request an informal discovery conference (IDC) at which the court will discuss the dispute with counsel and, if not resolved to the parties' satisfaction, will consider any request for leave to file a formal motion.

b.    The request for an IDC shall include:

    i.    A brief description of (A) the discovery issue or issues to be resolved and (B) the parties' respective positions regarding each issue. Each issue should be described in a single paragraph, and each party's position should be described in no more than a single paragraph per issue. No such description should be sent to the Court until counsel for each party has approved both the scope of the issues to be decided and the description of that party's position on those issues; and

    ii.    Three different dates and times at which all counsel litigating the discovery dispute agree to be available for a telephonic conference with the Court. The proposed dates may be Monday through Friday and should be no more than three weeks from the date of this email. The proposed starting times should be between 2:00 P.M. and 4:00 P.M.

c.    The conference may be conducted by telephone or in person, as counsel prefer. If the conference is to be by telephone, counsel shall provide the Court with the call-in telephone number and passcode no later than 24 hours before the scheduled conference.

d.    If the opposing side will not agree to participate in an informal conference, then the moving party shall bring an *ex parte* application for leave to file a discovery motion.

e.    Requesting an IDC tolls the deadline to file the discovery motion. (Code Civ. Proc., § 2016.080, subd. (c)(2).) If the court grants the IDC request, tolling ends on the date the IDC is complete. If the court denies the IDC request, tolling ends on the date the court gives notice of the denial. If the court takes no action on the IDC request, tolling ends 15 days after the request. (*Id.*, subd. (d).)

F.    <u>REQUESTS FOR DISMISSAL OF CLASS CLAIMS</u>

If the plaintiff seeks to dismiss or otherwise abandon either the entire action, any cause of action asserted on behalf of the putative class, or any defendant against whom any cause of action is asserted on behalf of the class:

1.    Because any such dismissal requires court approval, the plaintiff shall not use the preprinted Request for Dismissal, Judicial Council form CIV-110. Instead, the request shall be made by the submission to the court of (a) a declaration from plaintiff's counsel, (b) a declaration from each named plaintiff, and (c) a proposed order of dismissal.

2.    The declarations shall state whether the plaintiff has attempted to settle the plaintiff's individual claims, and if so, the status of those negotiations.

3.   The declarations must comply with California Rules of Court, rule 3.770(a), pertaining to any consideration being paid for the dismissal. Because the purpose of that rule is to avoid collusion between the parties to the detriment of the potential class members, the showing must be made by declaration rather than by stipulation.

4.   If the dismissal of the class or other representative claim is in exchange for any consideration other than a waiver of costs, or if the plaintiff has settled any individual claims concurrently with the agreement to dismiss the class or representative claims, the declaration of plaintiff's counsel shall authenticate a fully executed copy of any settlement agreement. In addition, the declaration shall address each of the following:

   a.   What is the form and value of the consideration, and to whom is it to be paid?

   b.   If the consideration is in the form of one or more monetary payments, how was the amount of that monetary consideration calculated?

   c.   Is the plaintiff required to execute a release in addition to a dismissal? If so, the declaration shall attach and authenticate that release.

   d.   How is the retention of that consideration either by the plaintiff or the plaintiff's attorney consistent with their respective fiduciary duties to the class? In particular, if the plaintiff has negotiated a settlement of any individual claim against any defendant separate from the representative claims, and that settlement provides for the payment to any plaintiff of consideration other than a waiver of costs, the declaration shall as to each such individual claim:

      i.    Estimate both (A) the total amount of damages, monetary penalties, attorney's fees and costs, interest, or other relief that the plaintiff would be awarded if the action were entirely successful at trial on that claim, and (B) the total amount of damages, monetary penalties, attorney's fees and costs, interest, or other relief that the plaintiff could reasonably expect to be awarded at trial, taking into account the likelihood of prevailing and other attendant risks;

      ii.   Briefly describe the basis for those estimates; and

      iii.  Describe the form and value of the consideration to be paid in satisfaction of that claim.

5.   The declarations by plaintiff and plaintiff's counsel shall state (a) whether the declarant has ever informed any of the putative class members – whether formally or informally, orally or in writing, individually or as a group – of the preparation, filing, or pendency of the action, and (b) if so, both (i) the nature and extent of that information and (ii) whether the declarant knows or has a means of discovering the name and mailing address of the putative class member or members to whom that information was communicated.

6.   If the dismissal is in exchange for no consideration other than a waiver of costs, the request shall explain the reason for the dismissal. If the reason is that the named plaintiff no longer wishes to prosecute the case on behalf of the putative class:

    a.      The plaintiff shall explain the reason for his or her change of heart. Simply stating that the plaintiff no longer wishes to represent the class is not sufficient.

    b.      The plaintiff's counsel shall explain why counsel wishes to abandon the class claims rather than locate a new class representative.

7.      Any request shall explain why the putative class members will not be prejudiced by the requested dismissal.

8.      If the complaint alleges any claims under Labor Code section 2699 (PAGA), and the plaintiff intends to dismiss any of those representative claims because the plaintiff has negotiated a settlement of individual claims against any defendant separate from the representative claims, and that settlement provides for the payment to any plaintiff of any consideration (other than a waiver of costs) that is in addition to or instead of PAGA penalties, the plaintiff's counsel's declaration shall describe the information required by section H.9.

## G.    MOTIONS & APPLICATIONS GENERALLY

1.      A party making an *ex parte* application must, *inter alia*, "[a]ttempt to determine whether the opposing party will appear to oppose the application." (Cal. Rules of Court, rule 3.1204(a)(2).) That attempt shall be made by telephone. Written notice asking the opposing party to inform the moving party of the opposing party's intentions is not sufficient.

2.      A party desiring an order shortening time for notice of a motion shall not bring an *ex parte* application for such an order until that party has first (a) reserved the earliest available hearing date for the motion and (b) filed the motion. The Court will not deem the *ex parte* application as constituting the motion to be heard.

3.      Any request for relief from a forfeiture of the right to a jury trial must be brought in the form of a noticed motion to be heard not later than the Trial Readiness Conference, or if no TRC is set, then not later than 21 days before the date first set for trial.

4.      Any party who obtains an order as a result of any motion, application, stipulation or recommendation filed by that party shall promptly (a) serve a copy of that order on all parties and (b) file a proof of that service with the Court.

5.      Any motion or application for relief shall describe any prior motion or application in this case for the same or similar relief, including the name of the party who brought the prior motion or application, the date of the ruling on that motion or application, and the nature of that ruling.

6.      Any request to continue a hearing, a case management conference, or a status conference must be (a) labelled as being a request for such relief, (b) supported by a declaration or stipulation establishing the facts that demonstrate good cause for that relief, and (c) accompanied by a proposed order.

7.   If the court is asked to take judicial notice of some document already filed with the Riverside Superior Court to support or oppose some motion or application, the request shall state (a) the name and case number of the case in which the document is filed, (b) the full name of the document, and (c) the date on which the document was filed. (Cal. Rules of Court, rule 3.1306(c)(1).) A second copy of the document shall not be attached to the request.

8.   Counsel shall not lodge copies of out-of-state authorities to which they have cited unless that authority is not available on Lexis and Westlaw.

9.   When offering evidence in support of or in opposition to a motion, no declaration shall be included as an exhibit to any other declaration.


## H.   MOTIONS FOR PRELIMINARY APPROVAL OF SETTLEMENT

If the matter is settled, a motion for preliminary approval of the settlement must be filed.

1.   Settlement Agreements in General

a.   The settlement agreement shall not provide that any order, notice, form, or judgment shall include any provision that this order prohibits from being included in such a document. (See §§ H.3 through H.10 and I, *infra*.)

b.   The settlement agreement shall be written, signed by all necessary parties, and filed, either in the form of a separate stipulation or as an authenticated attachment to a declaration of counsel.

2.   Notices of Settlement

Regardless of the terms of the proposed settlement, counsel shall not file a Notice of Settlement of Entire Case (Judicial Council form CM-200).

3.   The Motion in General

a.   The motion shall be supported by a declaration from the plaintiff's attorney that, *inter alia*:

i.   Sets forth the attorney's estimate of the number (A) of individuals in the class and (B), if the settlement also resolves a claim for statutory penalties under the Labor Code Private Attorney General Act of 2004 ("PAGA"), of aggrieved employees employed during the applicable PAGA period.

ii.   (A) Sets forth the attorney's estimate, as of the date the motion is made, of the total amount of damages, monetary penalties or other relief that the class would be awarded on each claim if that claim were entirely successful at trial; (B) explains how that estimate was calculated; and (C) states the collective total for all of the claims.

iii.   Sets forth: (A) the attorney's estimate, as to each claim and as of the date the motion is made, of the total amount of damages, monetary penalties or other

relief that the class could reasonably expect to be awarded at trial, taking into account difficulties of proof, the defendant's defenses, and other attendant risks; (B) the attorney's reasons for those estimates; and (C) the likely award at trial for all claims collectively.

iv.    Provides a foundation for those estimates by setting forth both (A) the number of class certification orders that the estimating attorney (as opposed to the attorney's firm as a whole) has obtained following contested certification motions concerning similar claims and (B) the number of trials that the estimating attorney (as opposed to the attorney's firm as a whole) has conducted concerning class or individual actions alleging similar claims.

v.     Sets forth the attorney's estimate of the recovery (A) by the average class member if the proposed settlement of the class claims were approved, and (B) by the average aggrieved employee if the proposed settlement of any PAGA claims were approved. If the recovery by different class members or aggrieved employees will vary, the attorney shall also estimate the range (high and low) of possible recoveries.

vi.    Describes in detail the nature and extent of the formal and informal discovery exchanged and other factual investigation conducted to determine the size of the class and the strength of the class claims.

vii.   States (A) whether the attorney is aware of any class, representative or other collective action in any other court in this or any other jurisdiction that asserts claims similar to those asserted in this action on behalf of a class or group of individuals some or all of whom would also be members of the class defined in this action, (B) whether the attorney has conducted reasonably diligent research to determine whether any such action exists, and (C) whether the attorney has reasonably inquired of other members of the attorney's law firm and any associated law firm to determine whether those individuals are aware of any such similar actions. If any such similar actions are known to exist, the declaration shall also state (D) the name and case number of any such case, the nature of the claims asserted, the definition of the class or other parties on whose behalf the action is brought, and the procedural status of that case.

viii.  Describes any other agreements between the plaintiff and the defendant that resolve individual claims asserted by the plaintiff against the defendant, including (A) the nature of the claims, (B) the reasonable value of the claims, and (C) the consideration exchanged to resolve those claims.

b.    The motion shall be supported by a declaration from the defendant's attorney that (i) states whether the attorney is aware of any class, representative or other collective action in any other court in this or any other jurisdiction that asserts claims similar to those asserted in this action on behalf of a class or group of

individuals some or all of whom would also be members of the class defined in this action, (ii) describes the research conducted by the attorney to determine whether such an action exists, and (iii) describes the attorney's inquiry of the defendant and of other members of the attorney's law firm and any associated law firm to determine whether the defendant or those individuals are aware of any such similar actions. If any such similar actions are known to exist, the declaration shall also state (iv) the name and case number of any such case, the nature of the claims asserted, the definition of the class or other parties on whose behalf the action is brought, and the procedural status of that case.

c. The motion shall describe how the value of any uncashed checks, unpaid cash residue, or other unclaimed or abandoned funds will be distributed. If the agreement provides for those unclaimed funds to be distributed to a *cy pres* rather than escheating to the state:

    i. The motion shall (A) identify the proposed recipient, (B) explain how a distribution to that recipient would be consistent with Code of Civil Procedure section 384, and (C) explain the reason for choosing proposed recipient as opposed to other potential recipients considered.

    ii. The motion shall be supported by a declaration from a knowledgeable person from the proposed recipient. The declaration shall:

        A. Establish that the recipient is a nonprofit organization, foundation, or program of the type described in section 384, subdivision (b).

        B. Describe the history of the recipient, the types of projects that it has conducted or supported over the last five years, and any particular use to which it would intend to devote the unpaid residue if received.

        C. Describe the geographic area in which the recipient operates in general, and the nature and extent of the services it provides in Riverside County in particular.

    iii. The declarations of the attorneys for the plaintiff and for the defendant shall describe both:

        A. Any relationship between the proposed recipient and (1) any class representative or other party, (2) any officer, director, or manager of any party, or (3) any attorney or law firm for any party; and

        B. The inquiries the attorney made to determine the existence and extent of any such relationship.

    iv. The agreement shall not provide that the unclaimed funds be deposited into the Industrial Relations Unpaid Wage Fund. (Lab. Code, § 96.6.) That fund is limited to wages or monetary benefits determined by the Labor Commissioner to be due to an employee after an investigation by the Labor Commissioner, and thus will not accept wages, penalties or interest

Page 10 of 22

distributed as part of the settlement of a lawsuit brought by a plaintiff other than the Labor Commissioner.

d.  If the settlement contemplates the use of an administrator to implement the terms of the settlement, the motion shall be supported by:

    i.  A declaration from the plaintiff's attorney, stating whether bids were sought from multiple potential administrators and, if so, the results of that competitive bidding. If no competitive bids were sought, or if the parties did not select the lowest bidder, the declaration shall explain the reason for that decision.

    ii.  A declaration from the administrator describing:

        A.  The administrator's experience;

        B.  The fee to be charged by the administrator to perform the services described in the settlement agreement and proposed order;

        C.  Whether that fee is (1) fixed, (2) hourly, or (3) hourly with a cap; and

        D.  How the fee was calculated.

e.  Any release to be given by the participating class members (other than the class representatives) shall be limited to:

    i.  The defendants named in the complaint, together with their officers, directors, and employees. If any other parties are sought to be released, the motion shall both (A) identify those other parties by name and (B) explain the facts that justify their inclusion.

    ii.  The claims stated in the complaint and those based solely upon the facts alleged in the complaint.

    iii.  Liability that arose during the class period as defined by the settlement agreement.

f.  If notice is not to be given by first class mail to addresses believed to be current, the motion shall discuss the proposed method of giving notice, the alternative methods considered, and the reasons that the proposed method is the one most likely to give actual notice to the greatest number of class members. If the identities of the class members are not known, the parties shall consider publication of notice in print, on the web, at the defendant's place of business, and through social media.

g.  If the settlement requires any of the class members to submit claims:

    i.  The motion shall explain why a claim process is reasonably necessary. If the defendant knows (A) the identity of the class members, (B) their addresses or former addresses, and (C) the facts necessary to calculate the recovery of each class member, the Court will require a strong showing of necessity for a claims process.

ii.    The motion shall explain the anticipated claims rate, and the basis for that prediction.

h.    If the settlement provides that any portion of the consideration paid or deposited by the defendant may revert to the defendant, the motion shall explain (i) the circumstances under which that reversion would occur, (ii) the maximum amount of any reversion, and (iii) why that reversion is fair.

i.    If the settlement includes compensation for unpaid wages, the motion shall describe how the employer's share of any applicable payroll taxes will be handled. The Court suggests that the employer's share not be paid out of the gross settlement fund.  The Court is not likely to include the amount of those payments when calculating the plaintiff's counsel's percentage attorney's fee.

j.    If the amount of the proposed settlement is sought to be justified in part by the assertion that the defendant cannot afford to pay any greater sum, the motion shall be supported by a declaration from plaintiff's counsel or expert describing (i) the date and nature of the defendant's financial records reviewed by the declarant and (ii) the information contained in those financial records that cause the plaintiff to believe that the defendant cannot afford a greater sum. The latter description shall be in sufficient detail to allow the Court to make an independent evaluation of the defendant's ability to fund a larger settlement.

k.    The documents that will be read by or used by the class members – the proposed notice, objection form, exclusion form, and any claim form – shall be drafted in a manner that is likely to be readily understood by the members of the class.

i.    In particular, they shall not contain any Latin terms (such as *et al.* and *et seq.*), any legal terms of art (such as "nonexempt" and "class certification"), or any unfamiliar symbols or abbreviations (such as §, LLC, and IWO).

ii.    To assist the Court in determining whether those documents comply with that directive, the motion shall be supported by a declaration of the defendant on personal knowledge concerning the likely age, education, and experience of the class members, and of their ability to read and comprehend English.

l.    The motion shall be accompanied by a separately filed document entitled "Compliance Chart" that shall consist of two columns. One column shall separately list each requirement prescribed by each paragraph or sub-paragraph of sections H.1 and H.3 through H.10 of this order.  The other column shall describe – by document name and page and line numbers – where in the moving papers the corresponding requirement is satisfied.

4.    <u>The Proposed Order</u>

a.    The motion shall be accompanied by a separate proposed order which shall include, as attachments to the order, the proposed notice (Cal. Rules of Court, rule 3.769(e)), proposed exclusion form, proposed objection form, any proposed claim form, and

any other form that is proposed to accompany the notice. The Court is likely to modify those proposed forms. Therefore, the Court will not issue an order that merely incorporates by reference the forms attached to the settlement agreement.

b.    The settlement agreement shall not be attached to the order.

c.    Counsel shall carefully review both the terms and the terminology of the order and accompanying forms (notice, objection form, exclusion form, and any claim form) to confirm that the various documents are internally consistent, consistent with each other, and consistent with the settlement agreement.

d.    The order shall state the name of any settlement administrator, and shall describe the nature of the services that the administrator will be required to perform, either directly or by reference to the settlement agreement.

e.    The order shall provide that the notice shall be accompanied by an exclusion form that the class members may use. The order shall provide that any exclusion form shall be submitted to the settlement administrator rather than filed with the court. The order shall not require the class member to send copies of the exclusion form to counsel, but may require the settlement administrator to do so. The order shall provide that the settlement administrator shall file a declaration concurrently with the filing of any motion for final approval, authenticating a copy of every exclusion form received by the administrator.

f.    The proposed order shall provide that the notice shall be accompanied by an objection form that the class members may use. The order shall provide that any objection shall be submitted to the settlement administrator rather than filed with the court. The order shall not require the class member to send copies of the objection form to counsel, but may require the settlement administrator to do so. The order shall provide that the settlement administrator shall file a declaration concurrently with the filing of any motion for final approval, authenticating a copy of every objection form received by the administrator.

g.    Neither the order, the notice, nor the objection form shall require an objecting party to do either of the following, either personally or through counsel:

    i.    To appear at the hearing on the motion for final approval for that party's objection to be considered.

    ii.    To file or serve, or to state in the objection, a notice of intention to appear at the hearing on the motion for final approval.

h.    The order shall require that either counsel or the administrator must give notice to any objecting party of any continuance of the hearing of the motion for final approval.

i.    Neither the order nor the notice shall purport to enjoin the class members from filing any actions or administrative claims or proceedings pending the final hearing on the settlement, or for any other period.

j.    If notice is to be given by mail, and if the class members will be required to submit a claim form, the order shall provide:

    i.    That the notice be accompanied by a stamped envelope addressed to the claims administrator; and

    ii.    That the claims administrator be required to send a reminder notice to every class member from whom no claim or exclusion request is received within 30 days of mailing the notice.

5.    <u>The Proposed Notice</u>

a.    The notice shall include an estimate of the likely recovery by the individual class member to whom the notice is sent, if known. If it is not known, the notice shall include an estimate of the likely recovery by the average class member. If the recovery by different members will vary, the notice shall also include an estimate of the range of possible recoveries.

b.    To avoid discouraging any dissenting class members from objecting to the proposed settlement, the notice shall clearly indicate that the Court has determined only that there is sufficient evidence to suggest that the proposed settlement might be fair, adequate, and reasonable, and that any final determination of those issues will be made at the final hearing.

c.    The notice shall advise the class members of where they can find the settlement agreement, by describing (i) the full title and filing date either of the settlement agreement or of the declaration or other document to which the agreement was attached when filed with the Court, (ii) the address of the courthouse to which the case is assigned, and (iii) the address of the court's website at which the case file can be viewed on-line.

d.    Neither the notice nor the documents enclosed with it shall describe any settlement administrator as the "claims administrator" unless the class members are required to submit claims.

e.    The notice shall include a description of any release being given by the class members.

6.    <u>The Proposed Claim Form</u>

The information required to be provided by the class member on any claim form shall not exceed the minimum information necessary to (a) identify the claimant, (b) process the claim, and (c) contact the claimant to clarify any uncertainties.

7.    <u>The Proposed Objection Form</u>

a.    The objection form shall (i) instruct the objecting class member that the objection must be mailed or delivered to the settlement administrator, (ii) state the name and address of the settlement administrator, and (iii) state the date by which the objection must be mailed or otherwise delivered.

b.    The information required to be provided by an objecting class member on the objection form shall not exceed the minimum information necessary to (i) identify the objector as a person entitled to object to the settlement, (ii) describe the nature of and basis for the objection, and (iii) contact the objector to clarify any uncertainties.

c.    If a claim must be submitted to participate in the settlement, the objection form shall remind the objector that, to participate in the settlement in the event that the objection is overruled, the objector must also submit a claim.

8.    <u>The Proposed Exclusion Form</u>

a.    The exclusion form shall (i) instruct the class member seeking exclusion that the exclusion form must be mailed or delivered to the settlement administrator, (ii) state the name and address of the settlement administrator, and (iii) state the date by which the exclusion form must be mailed or otherwise delivered.

b.    The information required to be provided by a class member on the exclusion form shall not exceed the minimum information necessary to (i) identify the person as a class member and (ii) contact the person to clarify any uncertainties.

9.    <u>PAGA Penalties</u>

a.    If the action includes a claim for statutory penalties under the Labor Code Private Attorney General Act of 2004 ("PAGA"), the motion shall explain the terms of any settlement of that claim.

b.    If the settlement provides for the payment of penalties under PAGA, the motion shall be accompanied by a declaration describing how the penalties were calculated and otherwise establishing facts sufficient to allow the Court to review and approve those penalties as required by Labor Code section 2699, subdivision (*l*). In particular, the declaration shall explain:

i.    The nature of the alleged violations.

ii.    The number of alleged individual violations, including both the length of the relevant employment period and the number of aggrieved employees allegedly employed during that period.

iii.    The total amount of penalties for which the defendant is potentially liable were those allegations to be proven.

c.    If the agreed-upon amount of PAGA penalties is less than the statutory maximum, the declaration shall explain why greater penalties would be unjust, arbitrary and oppressive, or confiscatory. (Lab. Code, § 2699, subd. (e)(2); *Amaral vs. Cintax Corp. No. 2* (2008) 163 Cal.App.4[th] 1157, 1213-1214.) In particular, the declaration shall explain:

i.    The extent to which the alleged violations would be likely to be found true at trial, considering the weight of the evidence, the clarity of the applicable law,

and the strength of any factual or legal defense likely to be asserted by the defendant.

ii.     The nature and extent of the discovery or other investigation undertaken by the plaintiff to estimate the likelihood of proving those allegations at trial.

iii.    The likelihood that any violations would be proven to have been knowing and intentional.

iv.     The total amount of penalties for which the defendant would be likely to be found liable at trial.

v.      Any facts that tend to suggest that the imposition of the total amount of statutory penalties for which the defendant would be likely to be found liable at trial would be unjust, arbitrary and oppressive, or confiscatory.

vi.     How the amount of the agreed-upon penalties was calculated or otherwise arrived at.

vii.    Whether the parties utilized the services of any neutral party to mediate this dispute.

viii.   Any other factors that are material to a determination that the amount of the agreed-upon penalties is fair.

d.  Any release of claims for PAGA penalties:

i.      Shall bind only the named plaintiff and the State of California;

ii.     Shall release only those claims described in the notice sent by the plaintiff to the Labor and Workforce Development Agency, and only to the extent that those claims are also alleged in the complaint.

e.  If any aggrieved employees cannot be found, or if the checks sent to aggrieved employees as their share of the PAGA penalties are not cashed, and the collective amount of those checks do not justify the expense of a second distribution to aggrieved employees who did cash their checks, the unclaimed funds shall be distributed to the Labor and Workforce Development Agency rather than to any *cy pres*.

10.  Revised Documents

If the Court either denies the motion or continues the hearing on the motion, and if the plaintiff thereafter files any amended settlement agreement, order, notice or form in support of either that motion or a renewed motion, the plaintiff shall file a declaration authenticating a "red-lined" version of the amended document, showing how the earlier version was modified.

I.    <u>MOTIONS FOR FINAL APPROVAL OF A SETTLEMENT</u>

If a motion for preliminary approval is granted, the plaintiff must thereafter move for final approval of the settlement.

1.    The order granting preliminary approval will set the date for the hearing on the plaintiff's motion for final approval.  Promptly after the entry of that order, the plaintiff shall reserve a law and motion hearing on the date set in the order.

2.    Any request for a "service," "enhancement," or "incentive" payment to a named class representative shall be supported by a declaration from the proposed recipient in which the declarant:

    a.    Describes the services performed by the declarant to further the prosecution of the action;

    b.    Estimates the time incurred by the declarant in performing those services;

    c.    Describes any risks assumed by the declarant in prosecuting the action;

    d.    Describes any adverse consequences actually suffered by the declarant as a result of prosecuting the action;

    e.    Describes any benefits received by the declarant as a result of prosecuting the action;

    f.    Describes the nature and amount of any expenses incurred by the declarant to further the prosecution of this action;

    g.    Describes the nature and value of any individual claims being released by the declarant, and explains how that value was calculated;

    h.    States whether the declarant is or was a named class representative in any other case, pending or closed, and if so, identifies any such case; and

    i.    States the amount that the declarant expects to receive as a class member.

3.    Any request for compensation for attorney's fees in a case that does not result in the creation of a common fund shall be supported by a lodestar analysis.  Any request for an attorney-fee award measured as a percentage of a common fund shall be supported by a lodestar analysis as a cross-check for the reasonableness of such a percentage award.  In either case, the lodestar analysis shall be supported by a declaration that:

    a.    Authenticates copies of the contemporaneous time records maintained by the plaintiff's attorneys for the services performed in this case.  If no contemporaneous time records were maintained, then the declaration shall state that fact, and shall (i) explain why no such records were kept, (ii) state the date on which legal services were provided, (iii) describe in detail the nature of those services, (iv) estimate the time incurred in performing those services, and (v) describe the basis for that estimate.

b.  Describes both (i) the hourly rate or rates customarily charged by each attorney for that attorney's time during the period in which those services were performed, and (ii) the attorney's experience and expertise that justify such a rate. The declaration shall state whether the attorney has clients that pay that rate, and if so, the percentage of the attorney's clients that do so. If the attorney works exclusively on a contingency basis, the declaration shall explain the basis for the hourly rate assigned to that attorney's work.

c.  States whether there is a fee-splitting agreement between plaintiff's counsel and any other attorney or law firm. If so, the declaration shall identify the other attorney or law firm, shall describe the terms of that agreement, and shall state whether the named plaintiff has approved that agreement in writing. (See Cal. Rules of Court, rule 3.769(b).)

4.  Any request for compensation for expenses incurred by the plaintiff's attorneys shall be supported by a detailed declaration or other evidence describing the date, nature, and amount of each expense incurred. In addition, the declaration:

a.  As to any travel expense exceeding $100, shall identify the mode of travel (e.g., by car, taxi, airplane, etc.), the starting point, the destination, and the number of persons making the trip.

b.  As to any expenses for overnight accommodations, shall explain the necessity for staying overnight and the number of persons doing so.

c.  As to any filing-fee expense, shall distinguish between court filing fees and fees for a courier or attorney's service to deliver the documents to be filed to the court.

d.  Shall omit any claim for any expense related to either (i) a motion for preliminary approval that was denied because of the plaintiff's failure to comply with the CMO, or (ii) a hearing on such a motion that was continued for such a failure.

5.  The motion shall be accompanied by a declaration from the settlement administrator. That declaration shall:

a.  Describe both (i) the administrator's distribution of the notice, objection form, exclusion form, and any claim form, and (ii) the results thereof. If claims are required, the declaration shall describe the number of claims received and the total value of the claims. The declaration shall clearly distinguish between valid forms and any forms that are untimely, incomplete, or otherwise invalid.

b.  Attach and authenticate (i) a copy of the final version of the notice and of all forms enclosed with it, including the objection form, the exclusion form, and any claim form, (ii) a copy of every objection form received, and (iii) a copy of every exclusion form received. If the reasons stated on any objection form are in a language other than English, the administrator shall include a translation into English.

c.     Describe (i) the services performed by the administrator to the date of the declaration, (ii) the time and expenses incurred to perform those services, and (iii) either the fee charged for those the services or the agreed-upon flat fee. The description of time and expenses incurred shall be in the same level of detail and in the same order as in the administrator's bid.

d.     Describe (i) the services to be performed by the administrator after the date of the declaration, (ii) the estimated time and expenses needed to perform those services, and (iii) either the estimated fee for those the services or the agreed-upon flat fee.

6.     If the settlement includes compensation for unpaid wages, and if the employer's share of the payroll taxes is to be paid out of the settlement funds, the motion shall be supported by a declaration estimating the amount of those taxes.

7.     The motion shall be accompanied by a proposed judgment or, if counsel prefer, a proposed combined order and judgment.

8.     The judgment shall require that:

a.     Any envelope transmitting a settlement distribution to a class member shall bear the notation, "YOUR CLASS ACTION SETTLEMENT CHECK IS ENCLOSED."

b.     Any settlement distribution check shall be negotiable for at least 90 days but not more than 180 days from the date of mailing.

c.     The administrator shall mail a reminder postcard to any class member whose settlement distribution check has not been negotiated within 60 days after the date of mailing.

d.     If (i) any of the class members are current employees of the defendant, (ii) the distribution mailed to those employees is returned to the administrator as being undeliverable, and (iii) the administrator is unable to locate a valid mailing address, the administrator shall arrange with the defendant to have those distributions delivered to the employees at their place of employment.

9.     The first reference in the judgment to the settlement agreement shall include a statement of (a) the title of the settlement agreement, (b) the date the agreement was filed, and (c) the name of the document to which the agreement was attached, if any.

10.     The judgment shall state the names of any class members who excluded themselves from the settlement, if any.

11.     If multiple law firms represent the plaintiff, the judgment shall separately state the fees and expenses to be paid to each firm.

12.     If the settlement agreement provides for the distribution of any funds to a *cy pres* recipient, the judgment shall state the recipient's name and address, and shall describe the circumstances under which funds would be paid to that recipient.

13.     The judgment shall not:

Page 19 of 22

a.   Expose the class members to a potential contempt charge by barring or otherwise enjoining the class members from prosecuting the released claims.

b.   Include a provision that the class members shall be deemed to have agreed not to sue on any released claims, or any other provision that may expose the class members to potential liability for either breach of contract or misrepresentation.

c.   Provide for the dismissal of the action.  (Cal. Rules of Court, rule 3.769(h).)

14.   The judgment may restrict the plaintiff and the defendant from offering the settlement agreement into evidence in actions between each other, but shall not purport to prevent other parties from doing so or to otherwise predetermine its admissibility in litigation involving third parties.

15.   If the Court either denies the motion for final approval or continues the hearing on the motion, and if the plaintiff thereafter files any amended proposed order or judgment, or other document in support of either that motion or a renewed motion, the plaintiff shall file a declaration authenticating a "red-lined" version of the amended document, showing how the earlier version was modified.

J.   MOTIONS REGARDING CLASS CERTIFICATION

1.   No motion for class certification or to deny class certification shall be filed without leave of court.  Before leave to file such a motion is requested, the Court expects the parties to have exhausted efforts to mediate a resolution of the case.

2.   At the time that the Court grants leave of court to file either a motion for class certification or a motion denying class certification, the Court will also establish a briefing schedule and will set a status conference on a date after the reply brief is due.  At the status conference, the Court will determine the date on which the motion will be heard.  The hearing date may be far enough in the future to allow for further mediation.  If the Court fails to set such a status conference, the hearing date reserved by the moving party shall be far enough in the future to extend the briefing schedule prescribed by California Rules of Court, rule 3.764(c)(1) by 3 calendar days; i.e., the motion shall be filed and served at least 31 calendar days before the hearing date, the opposition at least 17 calendar days before, and reply at least 8 calendar days before.

3.   If multiple classes or subclasses are alleged, the motion shall address the issues of definition, ascertainability and numerosity separately as to each class or subclass.

4.   If multiple class representatives are proposed, the motion shall address the issues of typicality and adequacy of representation separately as to each representative.

5.   If multiple class claims are alleged, the motion shall address the issue of whether common questions of law and fact predominate separately as to each such claim.

6.   A motion for class certification shall include:

a. A trial plan that explains how the plaintiff will establish a prima facie case at trial. If the plaintiff intends to rely upon statistical evidence to prove any portion of any class claim, the plan shall describe that evidence and how it will be used to promote manageability. If the defendant has raised any affirmative defenses that rely upon individual evidence, the plan that explains how those defenses can be litigated.

b. A declaration of proposed class counsel, describing his or her experience in representing a class at trial.

K. TRIAL

1. If the Court declares that a party has forfeited its right to a jury trial, that party shall not post jury fees until that party has obtained relief from that forfeiture.

2. Any request for relief from a forfeiture of the right to a jury trial must be brought in the form of a noticed motion to be heard not later than 21 days before the trial readiness conference, or if no TRC is set, then not later than 21 days before the date first set for trial.

L. JUDGMENTS

Whether issued after trial or after final approval of a settlement, any judgment shall comply with the following:

1. The judgment shall describe both the text of the notice of entry of judgment to be given to the class members (Cal. Rules of Court, rule 3.771(b)), the party or person required to give that notice, and the manner in which that notice is to be given.

2. If the judgment provides for payments to class members:

a. The judgment shall describe the intended disposition of any uncashed checks or other cash residue, including the name and address of the recipient.

b. The judgment shall set a deadline for the filing of a report concerning uncashed checks or other cash residue and shall identify the party or person responsible for filing that report. That deadline shall be after the deadline for the class members to negotiate their checks.

c. The judgment shall require the report to be in the form of a declaration from the settlement administrator or other declarant with personal knowledge of the facts, and to describe (i) the date the checks were mailed, (ii) the total number of checks mailed to class members, (iii) the average amount of those checks, (iv) the number of checks that remain uncashed, (v) the total value of those uncashed checks, (vi) the average amount of the uncashed checks, and (vii) the nature and date of the disposition of those unclaimed funds.

    d.     If Code of Civil Procedure section 384.5 is applicable, the judgment shall require the report to be accompanied by a proposed amended judgment that complies with that section.

## M.    FAILURE TO COMPLY

1.    If it appears that any attorney or party has violated any provision of this order, the Court may issue an order to show cause why monetary sanctions should not be imposed upon that attorney or party in an amount not to exceed $1,500. (Code Civ. Proc., § 177.5; Cal. Rules of Court, rule 2.30(b).)

2.    If the plaintiff's counsel fails to comply with the provisions of this order concerning motions for preliminary approval or final approval of a proposed settlement, with the result that final approval of the settlement is unnecessarily delayed, then the Court may reduce the attorney's-fee award to plaintiff's counsel to compensate the class members for the interest lost during the delay and to deny compensation to the attorney for that deficiency in the attorney's services. That reduction may be in the amount of $1,500 or more for every motion that fails to comply with this order.

## N.    OTHER

\_\_ \_\_    The Case Management Conference currently scheduled for \_\_\_, 2022, is advanced or continued to \_\_\_, 2022, at 8:30 A.M. in Department 1.

\_\_\_\_    The status conference currently set for \_\_\_, 2022, is vacated.

\_\_\_\_    The Court sets a Case Management Conference on \_\_\_2022 at 8:30 A.M.

\_\_\_\_    This CMO #2 entirely supersedes CMO #1, filed \_\_\_.

\_\_\_\_    The defendant having failed to pay the jury fees required by Code of Civil Procedure section 631, subdivision (b), within the time required by subdivision (c), that party has forfeited its right to a jury trial.

\_\_\_\_    The plaintiff's complaint does not comply with California Rules of Court, rule 3.761(b) regarding Class Action Allegations. No later than \_\_\_, 2022, the plaintiff shall file an amended complaint that fully complies with that rule.

Craig G. Riemer, Judge of the Superior Court

v. 167

Page 22 of 22

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

**Case Number:**   CVRI2202212

**Case Name:**   TROVATO vs AARON CHRYSLER OF NORCO

~~FIAT CHRYSLER AUTOMOBILES (FCA) US, LLC~~

## CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the foregoing notice on this date, by depositing said copy as stated above.

Notices Mailed: Class Action Case Management Order #1

Dated: 06/07/2022

W. SAMUEL HAMRICK JR.,
Court Executive Officer/Clerk of Court

by: _____

L. Howell, Deputy Clerk

CW-CCM
(Rev. 08/24/17)

'Notice has been printed for the following Firm/Attorneys or Parties: CVRI2202212

MULLIGAN, DANIEL J
4079 GOVERNOR DRIVE, #5015
San Diego, CA 92122

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

, ,

**Case Number:**     CVRI2202212

**Case Name:**        TROVATO vs AARON CHRYSLER OF NORCO

FIAT CHRYSLER AUTOMOBILES (FCA) US, LLC

## CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the foregoing notice on this date, by depositing said copy as stated above.

Notices Mailed: Class Action Case Management Order #1

Dated: 06/07/2022

W. SAMUEL HAMRICK JR.,
Court Executive Officer/Clerk of Court

by:   _____
          L. Howell, Deputy Clerk

CW-CCM
(Rev. 08/24/17)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

, ,

**Case Number:**     CVRI2202212

**Case Name:**     TROVATO vs AARON CHRYSLER OF NORCO

DANIEL J MULLIGAN
4079 GOVERNOR DRIVE, #5015
San Diego, CA 92122

## CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the foregoing notice on this date, by depositing said copy as stated above.

Notices Mailed: Class Action Case Management Order #1

Dated: 06/07/2022                                         W. SAMUEL HAMRICK JR.,
                                                                       Court Executive Officer/Clerk of Court


by:  _____
             L. Howell, Deputy Clerk

CW-CCM
(Rev. 08/24/17)

Notice has been printed for the following Firm/Attorneys or Parties: CVRI2202212


MULLIGAN, DANIEL J
4079 GOVERNOR DRIVE, #5015
San Diego, CA 92122

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
Court Ruling re:

06/07/2022
8:30 AM
Department 1

**CVRI2202212**
**TROVATO vs AARON CHRYSLER OF NORCO**

Honorable Craig Riemer, Judge
L. Howell, Courtroom Assistant
Court Reporter: None

**APPEARANCES:**

No Appearances

Class Action Case Management Order #1:
Court deems case complex pursuant to Section CRC 3.400.
Minute entry completed.